1                                 The Honorable Richard A. Jones

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

| | |
|---|---|
| LAURA KROTTNER and ISHAYA SHIMASA, individually and on behalf of all others similarly situated, | No. C09-0216 RAJ |
| Plaintiffs, | **DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** |
| v. | |
| STARBUCKS CORPORATION, a Washington corporation, | **NOTE ON MOTION CALENDAR: MAY 29, 2009** |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

# TABLE OF CONTENTS

**Page**

I.  SUMMARY ............................................................................................................1

II.  BACKGROUND....................................................................................................2

III.  ARGUMENT .........................................................................................................5

    A.  Legal Standard...............................................................................................5

    B.  Neither Plaintiffs' Alleged Concern That They Might Suffer Injury In The Future Nor Their Claimed Efforts To Protect Against That Hypothetical Future Injury Meet Article III Standing Requirements............6

        1.  The Complaint Does not Allege Injury In Fact .................................6

            a.  Allegations that Plaintiffs face an increased risk of identity theft do not establish injury in fact...........................7

            b.  Neither out-of-pocket costs for credit monitoring services nor time Plaintiffs spend monitoring credit and accounts establish injury in fact. ....................................9

            c.  Plaintiffs May Argue They Have Standing Under The Minority Rule Applied By Only A Handful Of Courts; This Court Should Not Be Persuaded....................10

            d.  Shamasa's Conclusory Allegation Of "Identity Theft" From Does Not Establish Any Actual Or Present Damage. ..............................................................................12

        2.  Plaintiffs Cannot Establish Standing By Relying On Alleged Injury To Others Or Their Status As Purported Class Representatives ..............................................................................13

    C.  Plaintiffs' Claims Fail On The Merits Because The Complaint Does Not Allege The Required Element Of Damages On Either Claim..............15

    D.  The Complaint Does Not State A Claim For Breach Of Contract. .............19

    E.  The Economic Loss Rule Bars Plaintiff's Negligence Claims...................23

IV.  CONCLUSION ....................................................................................................24

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alejandre v. Bull*, 159 Wash.2d 674, 153 P.3d 864 (2007)................................................23

*Aliano v. Texas Roadhouse Hldg. LLC*, 2008 WL 5397510 (N.D.Ill. Dec. 23, 2008)...........................................................................................18

*Allen v. Wright*, 468 U.S. 737 (1984).........................................................6, 14

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979)....................................................7

*Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696 (9th Cir. 1988) ........................................5

*Banknorth N.A. v. BJ's Wholesale*, 442 F.Supp.2d 206 (M.D.Pa. 2006)..........................23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) .......................6, 13

*Bell v. Axciom Corp.*, 2006 WL 2850042 (E.D.Ark. Oct. 3, 2006) ......................................9

*Bowen v. First Family Fin. Servs.*, 233 F.3d 1331 (11th Cir. 2000)..................................14

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ................................................5

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F.Supp.2d 273 (S.D.N.Y. 2008) ...........................................................................11, 16

*Caughlan v. Int'l Longshoremen's and Warehousemen's Union*, 52 Wash.2d 656, 328 P.2d 707 (1958)..................................................................20

*Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002)...............11, 12

*Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001) ........................................................18

*Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601 (W.D.Wash. 2001)..........................18

*Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wash. App. 5, 98 P.3d 491 (2004) .....................................................................................23

*Farrell v. Neilson*, 43 Wash.2d 647 (1953) .......................................................................19

*Forbes v. Wells Fargo*, 420 F.Supp.2d 1018 (D.Minn. 2006) ......................................15, 16

*Giordano v. Wachovia Securities LLC*, 2006 WL 2177036 (D.N.J. July 31, 2006) ...........................................................................................10

*Golden Dipt Co. v. Systems Engineering & Mfg. Co.*, 465 F.2d 215 (7th Cir. 1972) ...........................................................................................20

*Guin v. Brazos Higher Ed.*, 2006 WL 288483 (D.Minn. Feb. 7, 2006)..............................17

*Hendricks v. DSW Shoe Warehouse Inc.*, 444 F.Supp.2d 775 (W.D. Mich. 2006) ...........................................................................................17

*In re Syntex Corp. Sec. Litig.*, 95 F.3d 922  (9th Cir. 1996) ...............................................13

*In re TJX*, 524 F.Supp.2d 83 (D.Mass. 2007) ..................................................................24

*Kahle v. Litton Loan Servicing*, 486 F.Supp.2d 705 (S.D. Ohio 2007) ..............................16

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

**TABLE OF AUTHORITES**
**(continued)**

Page

*Key v. DSW, Inc.*, 454 F.Supp.2d 684 (S.D.Ohio 2006) ...................................7, 8

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ............................................21

*Lewis v. Casey*, 518 U.S. 343 (1996) .............................................................14

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) ........14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)....................................6, 14

*McClung v. City of Sumner*, 548 F.3d 1219 (9th Cir. 2008) ..............................19

*Melancon v. Louisiana Office of Stud. Fin. Ass't*, 567 F.Supp.2d 873
    (E.D.La. 2008)...........................................................................................16

*Milone & Tucci, Inc. v. Bona Fide Builders, Inc.,* 49 Wash.2d 363, 301 P.2d
    759 (1956)................................................................................................19

*Nelson v. King County*, 895 F.2d 1248 (9th Cir. 1990) ...................................12

*Oliver v. Flow Int'l Corp.*, No. 57382-9-I, 2006 WL 3707865 (Wash. App.
    Ct. Dec. 18, 2006) ....................................................................................23

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ......................................................14

*Ottgen v. Clover Park Tech. Coll.*, 84 Wash. App. 214, 928 P.2d 1119
    (1996) ......................................................................................................20

*Panag v. Farmers Ins. Co. of Wash.*, __Wash.2d __, 204 P.3d 885 (2009) .......18

*Pennsylvania State Employees Credit Union v. Fifth Third Bank*, 398
    F.Supp.2d 317 (M.D.Pa. 2005) ..................................................................24

*Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F.Supp.2d 710 (E.D.La. 2009)...................16

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007)................11, 15, 16

*Randolph v. ING Life Ins. & Annuity Co.*, 486 F.Supp.2d 1 (D.D.C. 2007)..............8, 9, 10

*Remsburg v. Docusearch, Inc.*, 816 A.2d 1001 (N.H. 2003) ..............................9

*Ruiz v. Gap, Inc.*, 2009 WL 941162 (N.D.Cal. Apr. 6, 2009).....................11, 17

*Saluteen-Maschersky v. Countrywide*, 105 Wash. App. 846 (2001)..................19

*Shafran v. Harley Davidson Inc.*, 2008 WL 763177 (S.D.N.Y. Mar. 20,
    2008) ......................................................................................................17

*Smith v. Chase Manhattan Bank*, 293 A.D.2d 598, 741 N.Y.S.2d 100
    (N.Y.App.Div. 2002) ................................................................................18

*Stollenwerk v. Tri-West Health Care Alliance,* 2005 WL 2465906 (9th Cir.
    Nov. 20, 2007)..........................................................................................17

*Talbert v. Homes Savings of America* , 638 N.E.2d 354 (Ill. App. 1994)..........23

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ....................................21

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - iii
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1

2

## TABLE OF AUTHORITES
### (continued)

Page

3    *Valley Forge Christian College v. Americans United for Sep't of Church
     and State, Inc.*, 454 U.S. 464 (1982) ...................................................................6

4    *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ...............................6

5    *Whitmore v. Arkansas*, 495 U.S. 149 (1990) ......................................................................7

6    *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510 (9th Cir. 1992) .....................................14

### STATUTES

7    15 U.S.C. § 1681b ................................................................................................................21

8

### TREATISES

9    Restatement (Second) of Contracts § 60 ...........................................................................19

10

### REGULATIONS

11   26 C.F.R. § 31.6051 ............................................................................................................20

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - iv
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

I.   <u>SUMMARY</u>

Defendant Starbucks Corporation ("Starbucks") moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' Amended Complaint ("Complaint").[1]  The allegations in Plaintiffs' Complaint, taken as true for purposes of this motion, do not support cognizable claims under federal or state law.

Plaintiffs' claims arise from the October 2008 theft of a Starbucks laptop containing some employees' personal information.  Ms. Krottner and Mr. Shamasa are former Starbucks employees who live in Illinois.  They allege that a Starbucks laptop containing their name, address and Social Security number was stolen in October of 2008. Starbucks notified Plaintiffs and other employees of the theft and provided one year of free credit monitoring plus identity theft insurance to Plaintiffs and other employees whose information was on the stolen laptop.  Plaintiffs took advantage of that offer and enrolled in the credit monitoring service.

The Complaint portrays this as an "identity theft" case, but does not allege that either Plaintiff has suffered actual or present loss from identity theft as the result of the laptop theft.  Instead, Plaintiffs' claims focus on increased risk of loss from future identity theft or costs of taking steps to protect against such a risk, e.g., purchasing additional credit monitoring after the one year of complimentary credit monitoring that Starbucks provided has expired.  Many courts across the country have dismissed identical claims because a fear of future harm cannot, as a matter of law, confer standing on a plaintiff nor support a *current* claim on the merits.  The result should be the same here.

---

[1] This case is related to *Lalli v. Starbucks Corporation*, WAWD Case No. 09-00389 RAJ, and Plaintiffs have moved to consolidate the two cases.  The complaints in both cases are nearly identical.  Local counsel is the same in both bases.  The plaintiffs' claims in both cases fail as a matter of law for the same reasons.  Accordingly, Starbucks makes the same legal arguments in this motion to dismiss as it makes in its motion to dismiss the *Lalli* case, which is being filed at the same time as this motion.  The only difference is that this motion addresses the additional allegations made by new plaintiff Ishaya Shimasa.  Otherwise, the two motions are substantively identical.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 1
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

The Complaint should be dismissed for several reasons:

(1)  Plaintiffs' allegations of increased risk of future loss from identity theft, or "concern" or expense to protect against a perceived risk, are not sufficient injury-in-fact to confer Article III standing (either individually or on behalf of the alleged class).  According to the Complaint, neither Plaintiff has suffered any actual or present loss.  All of Plaintiffs' claims must be dismissed for this reason;

(2)  The Complaint does not allege that Plaintiffs suffered any actual or present injury that is legally sufficient to establish the damage elements of their negligence and breach of contract claims;

(3)  Plaintiffs' breach of implied contract claim is defective on its face because the Complaint does not plead a legally-cognizable contract between Plaintiffs and Starbucks; and

(4)  Plaintiffs' negligence claims are barred by the economic loss rule.

Plaintiffs' claims are unsustainable as a matter of law and their Complaint should be dismissed with prejudice.

## II.     BACKGROUND

Plaintiffs Laura Krottner and Ishaya Shamasa are both Illinois residents who were employed by Starbucks for three years.  *See* Amended Class Action Complaint ("Compl.") at ¶¶ 17, 18 (Dkt. No. 18).  Plaintiffs provided their names, addresses, and Social Security Numbers to Starbucks in the course of their employment.  *Id.* at ¶¶ 60-61, 101.  This information is referred to throughout the Complaint as "PII" (Personally Identifiable Information).

On October 29, 2008, a Starbucks laptop was stolen from an unnamed location.  At the time of the theft, the laptop contained (among other information) the PII of approximately 97,000 Starbucks employees.  *Id.* at ¶¶ 20, 21.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 2
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

Shortly thereafter, Starbucks sent a letter to its employees whose PII may have been on the stolen laptop. *Id.* at ¶ 24. The November 19, 2008 letter ("Notice Letter") informed the employees that a laptop containing the PII of "approximately 97,000 U.S. partners, including yours" had been stolen on October 29, 2008. *See* Compl., Ex. A. The Notice Letter stated that a police report had been filed with the Seattle Police Department, and advised recipients that "[a]t present, we have no indication that the private information has been misused." *Id.* Nonetheless, Starbucks offered guidance and free protective measures to its partners in the Notice Letter, stating:

> As a precaution, we ask that you monitor your financial accounts carefully for suspicious activity and take appropriate steps to protect yourself against potential identity theft. To assist you in protecting this effort, Starbucks has partnered with Equifax to offer, at no cost to you, credit watch services for the next year. This service provides you with an early warning of any changes to your credit file... In addition, the Federal Trade Commission has released a comprehensive guide that may provide you with valuable information to help protect yourself against and deal with identity theft. It is available for free online at http://www.ftc.gov/bcp/edu/microsites/ idtheft/consumers/ about-identity-theft.html.

*Id.* The Notice Letter informs recipients that Starbucks had no evidence that their PII had been compromised or misused. *Id.*

The Notice Letter enclosed a summary of the Equifax Credit Watch Silver Monitoring credit watch service that Starbucks offered to affected employees. *Id.* at 2. That service monitors any changes to a person's credit file, and provides benefits including comprehensive credit file monitoring of the Equifax credit report with weekly notification of key changes; available wireless and customizable alerts; a copy of an Equifax credit report; $2,500 in low-deductible identity theft insurance; and 24-7 live agent Customer Service to assist in providing identity theft victim assistance, initiating an investigation of inaccurate information, and general assistance in understanding credit information. *Id.*

Both plaintiffs accepted the offer of the free year of Credit Watch services. Compl. at ¶¶ 30, 33. Ms. Krottner also contacted her bank and asked them to monitor her accounts

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 3
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

for suspicious activity. *Id.* at ¶ 30. She alleges that since receiving the Notice Letter, she has "been extra vigilant about watching her banking and 401(k) accounts" and spends "substantial" time "check[ing] them" (for unspecified activity) "nearly every day." *Id.* at ¶ 31. Ms. Krottner further alleges that in the future she will have to pay for additional credit monitoring services after the one year of free credit monitoring provided by Starbucks expires. *Id.* at ¶ 32. However, Ms. Krottner does not allege that she has suffered any actual and present loss from identity theft or credit fraud.

Unlike Ms. Krottner, Plaintiff Shamasa does not claim that he has been extra vigilant in monitoring his accounts since the laptop theft. However, he alleges that Chase Bank contacted him in December 2008 and told him that there had been "an attempt to open up a new checking account with his social security number." *Id.* at ¶ 34. That account was closed after Mr. Shamasa told the bank that he did not open it. *Id.* Mr. Shamasa does not allege that his name or address were used in the attempt to open that account. More importantly, he does not allege that he suffered any loss from the attempt, e.g., he does not claim that any checks were written on the account or that creditors attempted to collect from him on such checks or that he otherwise lost money. Nor does Mr. Shamasa claim that his PII was used to improperly access any of his existing bank or credit accounts. Though the Complaint labels this "attempt" as "identity theft," the facts pled show no damage.

Both plaintiffs allege that they are at increased risk of loss from future identity theft, claiming that the laptop theft has made them "an easier mark for identity theft" by exposing "a consolidated and verified list of actual PII" to potential identity thieves. *Id.* at ¶ 71.[2] However, the Complaint does <u>not</u> plead that the purpose of the laptop theft was to

---

[2] Plaintiffs suggest that "various people have commented on Starbucks-themed internet message boards that they have been victims, or know people who have been victims, of identity theft as a result of the Breach." *Id.* at ¶ 80. That allegation – whether it be called single, double, or even triple hearsay – cannot state a claim. Only Plaintiffs' damages are

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 4
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

acquire the PII contained on the laptop, or that it fell into the "wrong hands" of identity thieves, or that the PII was even accessible or known to the thief who stole the laptop.  Put more simply, the Complaint pleads no reason to think this was anything more than an ordinary property crime.  Both plaintiffs also claim to have suffered emotional distress, anxiety, and "loss of privacy" as a result of the laptop theft.  *Id.* at ¶ 106.

Nonetheless, Plaintiffs assert that Starbucks is <u>presently</u> liable to Plaintiffs and the purported class for damages and other relief, on counts of negligence and breach of contract.  Plaintiffs' negligence claim asserts that Starbucks failed to maintain reasonable security procedures and practices to protect her PII and that the direct and proximate result was "release" of their PII when the laptop was stolen.  *Id.* at ¶¶ 98-99.  Plaintiffs' breach of contract claim rests on an alleged implied contract, the terms of which are purportedly "memorialized" in selectively-excerpted snippets from Starbucks' Owner Staffing Services Brochure (the "Brochure"), its Standards of Business Conduct (the "Standards"), and a web page on the Starbucks website.  *Id.* at ¶ 102.

Starbucks now moves to dismiss Plaintiffs' claims with prejudice and without leave to amend, as amendment would be futile.

III.   <u>ARGUMENT</u>

A.   <u>Legal Standard.</u>

A complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim if it lacks a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).  Allegations of material facts are generally taken as true and construed in the light most favorable to the non-moving party on a Rule 12(b)(6) motion.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, the court need not

before the Court and the fact that other potential class members may claimed to have suffered identity theft does not create injury or vest standing in Plaintiffs, as discussed below.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 5
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

accept conclusory allegations, legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *See, e.g., Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). A plaintiff's obligation to state the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 65 (2007) (citations omitted).

B.    <u>Neither Plaintiffs' Alleged Concern That They Might Suffer Injury In The Future Nor Their Claimed Efforts To Protect Against That Hypothetical Future Injury Meet Article III Standing Requirements.</u>

The Court's judicial power is limited to adjudicating actual "cases" and "controversies." *Allen v. Wright*, 468 U.S. 737, 750 (1984). The Article III case or controversy requires that a plaintiff have standing to assert her claims. To establish standing at the motion to dismiss stage of litigation, a plaintiff must allege that (1) she suffered an injury in fact, i.e., an invasion of a legally protected interest that is both (a) *concrete and particularized*, and (b) *actual and imminent*, not conjectural or hypothetical; (2) her injury is fairly traceable to actions of the defendant; and (3) it is likely such injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). This is the "'irreducible minimum' required by the Constitution" for Plaintiffs to bring a case in federal court. *Valley Forge Christian College v. Americans United for Sep't of Church and State, Inc.*, 454 U.S. 464, 472 (1982).

1.    The Complaint Does not Allege Injury In Fact.

Plaintiffs fail the first prong of the standing test. Their allegations that the laptop theft put them at increased risk of loss from identity theft do not allege a constitutionally-sufficient injury in fact. Plaintiffs cannot rely on allegations by others, or their status as purported class representatives, to establish standing. *See, infra,* Section III(B)(2).

The Complaint does not plead that Plaintiffs have lost any money or property as a result of identity theft or credit fraud, or that such acts, had they occurred, were the direct

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 6
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

and proximate result of anything Starbucks did or failed to do.  Plaintiffs do not contend that the laptop theft was anything other than the ordinary property crime it appears to be (i.e., they do not plead that the theft was conducted to obtain and misuse their personal information).  Ms. Krottner does not plead that anyone has accessed her PII, or even that it was accessible, much less that it was used improperly.  Mr. Shamasa pleads only a single short, conclusory sentence that "Plaintiff Shamasa has had his identity stolen as a result of the Breach," Compl. at ¶ 79, which appears to refer to the unsuccessful attempt to open a bank account using his social security number – an attempt that apparently was quickly corrected and resulted in no damages or loss.[3]

The essence of Plaintiffs' claim is their belief that the laptop theft put them at "increased" risk of suffering actual loss from identity theft in the future, that they have spent time taking measures to protect against that perceived risk, and that they may in the future incur expenses to protect against it.  As the United States Supreme Court has squarely held, that is not enough:  "Allegations of possible future injury do not satisfy the requirements of Art. III.  A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990), *quoting Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).  The "injury" pled by Plaintiffs is neither certain nor impending.

a.   Allegations that Plaintiffs face an increased risk of identity theft do not establish injury in fact.

Many courts faced with similar allegations and claims concerning loss of PII have concluded that plaintiffs whose personal information was stolen do not have a constitutionally-sufficient injury in fact based on alleged increased risk of loss from future identity theft.[4]  For example, in *Key v. DSW, Inc.*, 454 F.Supp.2d 684 (S.D.Ohio 2006), a

---

[4] As discussed below, a minority of courts have concluded that increased risk of harm may be sufficient injury in fact to establish standing in those jurisdictions.

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

retail customer claimed that DSW's failure to properly secure customer data resulted in the theft of account and personal financial information for 96,000 customers.  Like Plaintiffs here, the *Key* plaintiff claimed the loss exposed her and a purported class to a "substantially increased risk of identity theft," and that she had incurred the cost and inconvenience of canceling credit cards, closing checking accounts, ordering new checks, obtaining credit reports and purchasing identity and/or credit monitoring services.  *Id.* at 687-88.  DSW moved to dismiss, arguing that the plaintiff's alleged losses did not constitute an injury in fact for standing purposes.  The court recognized that virtually every court to consider the issue agreed with the defendant:

> ***In the identity theft context, courts have embraced the general rule that an alleged increase in risk of future injury is not an "actual or imminent" injury***.  Consequently, courts have held that plaintiffs do not have standing, or have granted summary judgment for failure to establish damages in cases involving identity theft or claims of negligence and breach of confidentiality brought in response to a third party theft or unlawful access to financial information from a financial institution.

*Id.* at 689 (emphasis added).  The *Key* court reached the same result, holding that the plaintiff had not suffered any injury-in-fact because her "potential injury [was] contingent upon her information being obtained and then used by an unauthorized person for an unlawful purpose."  *Id.* at 690.  All claims (including claims for negligence and breach of contract) were dismissed for lack of standing.

The court in *Randolph v. ING Life Ins. & Annuity Co.*, 486 F.Supp.2d 1 (D.D.C. 2007) also held that allegations of increased risk of damages from future identity theft due to the loss of PII (the names, addresses, and Social Security numbers of 13,000 ING insureds) in the theft of a laptop from the home of an ING representative did not establish actual or imminent injury:

> Plaintiffs in the instant action allege that they "have been placed at a substantial risk of harm in the form of identity theft."  They fail, however, to allege any injury that is "actual or imminent, not conjectural or hypothetical."  Plaintiffs clearly allege that their Information was stolen by a burglar, but they do not allege that the burglar who stole the laptop did so in

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 8
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

order to access their Information, or that their Information has actually been accessed since the laptop was stolen. ***Plaintiffs' allegations therefore amount to mere speculation that at some unspecified point in the indefinite future they will be the victims of identity theft.*** However, to ground Article III standing, "the injury alleged cannot be conjectural or hypothetical, remote, speculative, or abstract. Rather it must be certainly impending." ***Plaintiffs' claims that they are subject to an increased risk of identity theft and inconvenience as a result of the burglary therefore fail to allege an injury in fact***

*Id.* at 7-8 (citations omitted, emphasis added).

The court in *Bell v. Axciom Corp.,* 2006 WL 2850042 (E.D.Ark. Oct. 3, 2006), reached the same conclusion.  *Bell* was a purported class action arising from the hacking and compromise of personal, financial, and company data that Axciom stored for corporate clients.  The court recognized that "while there have been several lawsuits alleging an increased risk of identity theft, ***no court has considered the risk itself to be damage.***"  *Id.* at *2 (emphasis added).[5]  The court followed the general rule and held that increased risk of loss from future identity theft was not "concrete damage" or sufficient to establish an injury in fact.  *Id.*

        b.      Neither out-of-pocket costs for credit monitoring services nor time Plaintiffs spend monitoring credit and accounts establish injury in fact.

Plaintiffs allege that they have spent time monitoring their credit or working with their bank, and claim they might incur out-of-pocket costs for credit monitoring services in the future.  Those alleged damages are likewise insufficient to establish an injury in fact because they derive from Plaintiffs' general fear that they might someday suffer actual injury from identity theft.  If the increased risk of future harm is itself too speculative to establish injury, certainly steps to protect against it are also too speculative.  Several courts

---

[5] The *Bell* court also noted that one court had found damages where the plaintiff had "actually suffered identity theft," *id.* at *2, citing *Remsburg v. Docusearch, Inc.*, 816 A.2d 1001, 1007-8 (N.H. 2003), explaining that *Remsburg* held a private investigatory firm liable where it had actually sold information, including the social security number and work address of plaintiff's daughter, to a man who had been stalking and then killed plaintiff's daughter.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 9
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

have reached that conclusion on similar facts in other data breach cases.  For example, the court in *Randolph* held that time and money spent monitoring credit following a data breach were not the result of any present injury and were solely the result of a perceived risk of future harm that might never materialize.  Accordingly, they did not establish an injury in fact for standing purposes.  *See Randolph*, 486 F.Supp.2d at 8 (citations omitted).

Similarly, in *Giordano v. Wachovia Securities LLC*, 2006 WL 2177036 (D.N.J. July 31, 2006), Wachovia lost documents containing the names, addresses and Social Security numbers of thousands of clients.  Giordano accepted Wachovia's offer of one year of free credit monitoring, as Plaintiffs have done here, then filed a class action lawsuit against Wachovia at the end of that year alleging negligence and various other common law torts arising from the data loss.  Giordano argued that injury in fact was established for standing purposes because she incurred out-of-pocket credit monitoring costs after the year of credit monitoring provided by Wachovia expired.  The court disagreed, explaining that "Plaintiff's claims … are based on nothing more than the chance – or 'odds' – that she will be the victim of wrongdoing at some unidentified point in the indefinite future."  *Id.* at *4. Accordingly, the court held that plaintiff's alleged need to incur credit monitoring costs to prevent potential identity theft "simply does not rise to the level of creating a concrete and particularized injury."  *Id.* (citation omitted).

The result should be the same here.  Plaintiffs have alleged no more actual and present injury than the plaintiffs in *Key, Randolph, Bell* and *Giordano*.  They have no standing.

          c.      <u>Plaintiffs May Argue They Have Standing Under The Minority Rule Applied By Only A Handful Of Courts; This Court Should Not Be Persuaded.</u>

Only three courts have departed from the general rule and concluded that allegations of increased risk of future loss from identity theft and costs of monitoring can establish an injury in fact for standing purposes.  Every one of those courts went on to

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 10
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

dismiss the plaintiffs' negligence or breach of contract claims for failure to establish damages on the merits of their claims.  For example, the Seventh Circuit applied a less rigorous test for standing on a Rule 12(b)(6) motion in *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639-40 (7th Cir. 2007), holding that the threat of loss from future identity theft created by exposure of a plaintiff's PII in a data breach could establish standing.  On summary judgment, a New York district court in *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F.Supp.2d 273, 283-84 (S.D.N.Y. 2008) reached the same conclusion after applying the Seventh Circuit standard from *Pisciotta* and a line of Second Circuit authority finding standing from increased risk of future harm from exposure to environmental toxins or unsafe food products.  *Pisciotta* and *Caudle* both dismissed plaintiff's negligence claim for failure to establish damages after finding standing.

Other than *Pisciotta* and *Caudle*, only the court in *Ruiz v. Gap, Inc.*, 2009 WL 941162 (N.D.Cal. Apr. 6, 2009), found standing on similar facts – and it also then dismissed the plaintiff's negligence and breach of contract claims on summary judgment for failure to establish damages for the reasons discussed here in Section III, C.  The *Ruiz* court acknowledged that "the Ninth Circuit has not determined that standing exists based on an increased risk of identity theft."  *Id.* at * 3.  However, it held that increased risk of loss from future identity theft was sufficient injury in fact for standing purposes based on the *Pisciotta* and *Caudle* cases, on expert testimony that purported to quantify Ruiz's increased risk, and on a comment in *Central Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002) that "the possibility of future injury may be sufficient to confer standing."  *Id.*

The better-reasoned line of authority is that followed by the courts in *Key, Randolph, Bell* and *Giordano* which found no standing.  The lines of authority that led the *Pisciotta* and *Caudle* courts to find standing under Second and Seventh Circuit law do not exist under Ninth Circuit law.  The *Central Delta Water* case cited in *Ruiz* involved a

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 11
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

challenge to a plan that had already been implemented by the Bureau of Reclamation to release water from a reservoir; the Bureau's own documents said this release would repeatedly violate the water purity standards that the plaintiffs had sued to enforce, i.e., it was a question of "when" and not "if" harm would occur. *See* 306 F.3d at 948-49. The Circuit's holding on standing was limited to threats of environmental harm, and based on a line of authority recognizing that requiring proof of actual harm would undermine the purpose of the Clean Water Act by allowing environmental damage to occur before action could be taken. *Id.* at 948.

The data loss context is much different. The Ninth Circuit has never recognized relaxed standing rules for data loss cases, as it did in *Central Delta Water* for certain environmental injury cases. More importantly, unlike in *Central Delta Water,* there is no certainty in data loss cases that harm will ever occur, i.e., the alleged injury is not "certainly impending." Instead, there is only speculation that a threat exists (i.e., that the laptop thief has accessed plaintiff's PII and intends to use it) and further speculation that the threat will be carried out and result in damage (i.e., that identity theft will occur and cause a concrete loss). That is not the type of injury the Ninth Circuit recognizes for standing purposes. *See Nelson v. King County*, 895 F.2d 1248, 1252 (9th Cir. 1990) ("Both the Supreme Court and our circuit have repeatedly found a lack of standing where the litigant's claim relies upon a chain of speculative contingencies, particularly a chain that includes the violation of an unchallenged law.").

       d.    <u>Shamasa's Conclusory Allegation Of "Identity Theft" From Does Not Establish Any Actual Or Present Damage.</u>

Plaintiff Shamasa makes a conclusory allegation that he "learned" of an "attempt" to open a bank account with his Social Security number. Comp. at ¶ 79. This alleged "attempt" does not without more establish actual loss. The Complaint does not plead that Mr. Shamasa suffered any financial loss or actual damage from the "attempt," or that the

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 12
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

bank account was used, or even attempted to be used.  Instead, he relies solely on a one-sentence conclusory allegation that the "attempt" proves he "had his identity stolen as a result of the Breach."  Compl. at ¶ 79.[6]  He does not plead any facts that might give rise to a reasonable inference that the "attempt" was an intentional effort to misuse his PII.

As is well-established, Plaintiffs cannot survive a motion to dismiss merely by relying on conclusory allegations and unwarranted inferences.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).  "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).  "Factual allegations must be enough to raise a right to relief above the speculative level...."  *Twombly*, 550 U.S. at 556 (citations omitted).  In addition, the pleading must not merely allege conduct that is conceivable, but it must also be plausible.  *Id.* at 570.  Mr. Shamasa's single conclusory sentence does not even come close to meeting those standards.

        2.    <u>Plaintiffs Cannot Establish Standing By Relying On Alleged Injury To Others Or Their Status As Purported Class Representatives.</u>

The Complaint alleges that unidentified persons have reported on unidentified "Starbucks-themed internet message boards" that they have become victims, or know people who have become victims, of identity theft as a result of the laptop theft.  *See* Compl. ¶ 80.[7]  Vague hearsay allegations about what someone else has allegedly

---

[6] Mr. Shamasa also does not plead facts that could tie the alleged use of his PII to the theft, e.g., that his other PII allegedly stolen (name, address) was also used in the "attempt," that the "attempt" occurred in geographic proximity to the laptop theft, etc.

[7] The Complaint is silent as to what, if any, loss the alleged "identity theft" has caused to these unidentified message board posters.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 13
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

experienced cannot establish standing for Plaintiffs, who have not suffered the same thing.

For standing purposes, the alleged injury must be particularized to the plaintiff and "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Accordingly, "[t]he standing doctrine includes 'the general prohibition on a litigant's raising another person's legal rights.'" *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 520 (9th Cir. 1992), *quoting Allen v. Wright*, 468 U.S. 737, 750 (1984); s*ee also Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (standing doctrine bars party from asserting another person's right). The Complaint's reference to the unidentified hearsay allegations of harm on the "internet message boards" is nothing more than an attempt to assert someone else's alleged claim for someone else's alleged injury.

Nor does the fact that Plaintiffs have pled this case as a class action change the standing requirement or cure their failure to satisfy the requirement of proving an injury in fact to Plaintiffs personally. A class representative cannot litigate a claim against a defendant whom he or she cannot sue individually, and must instead establish standing in his own right. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Lierboe*, 350 F.3d at 1022 ("our law makes clear that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'"), *quoting O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). *See also Bowen v. First Family Fin. Servs.*, 233 F.3d 1331, 1339 & n.6 (11th Cir. 2000) ("a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, 'even if the persons described in the class definition would have standing themselves to sue.'").

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 14
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1

2

C.   <u>Plaintiffs' Claims Fail On The Merits Because The Complaint Does Not Allege
The Required Element Of Damages On Either Claim.</u>

Even if the alleged injuries pled by Plaintiffs were enough to meet the standing

requirement, which they are not, Plaintiffs cannot establish the required damage elements

on the two causes of action they assert.   No court anywhere in any published decision (or,

to counsel's knowledge, any unpublished decision) has awarded a plaintiff the type of

damages alleged by Plaintiffs on similar facts and legal theories.[8]

Though no Washington court has directly addressed data loss cases like this, courts

around the country have dismissed negligence and breach of contract claims virtually

identical to those asserted in the Complaint after concluding that the alleged damages –

increased risk of loss from identity theft, inconvenience and cost of credit monitoring,

anxiety – were insufficient to establish the essential damages element of such claims.  *See,
e.g., Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639-40 (7th Cir. 2007) ("Plaintiffs have

not come forward with a single case or statute, from any jurisdiction, authorizing the kind

of action they now ask this federal court, sitting in diversity, to recognize as a valid theory

of recovery under Indiana law.").

For example, in *Forbes v. Wells Fargo*, 420 F.Supp.2d 1018 (D.Minn. 2006), the

court applying Minnesota law dismissed negligence and breach of contract claims arising

from the theft of computers from Wells Fargo containing the plaintiffs' names, addresses,

Social Security numbers, and bank account information.   Like Plaintiffs in this case, the

plaintiffs in *Forbes* argued that the damages elements of their claims were established by

increased risk of loss from future identity theft and the cost of credit monitoring.   The court

disagreed, explaining that the plaintiffs' argument "overlook[s] the fact that their

---

[8] The Complaint pleads that Washington law applies to Plaintiffs' claims, instead of the
law of the two plaintiffs' home state, Illinois.   Compl. at ¶¶ 11-16.   Without conceding the
correctness of that assertion, or that Washington law governs Plaintiffs' and the putative
class members' claims, Starbucks will analyze Plaintiffs' claims under the law of
Washington because the result would be the same under either Washington or Illinois law.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 15
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

expenditure of time and money was not the result of any <u>present injury</u>, but rather the

anticipation of <u>future injury</u> that has not materialized.  In other words, the plaintiffs'

injuries are solely the result of a perceived risk of future harm." *Id.* at 1021(emphasis

added).[9]  Accordingly, both claims were dismissed for inability to establish damages.

Many other courts have reached the same conclusion and held that increased risk

of loss from future identity theft and credit-monitoring costs such as those alleged here

cannot establish the damages element of negligence claims.  *See, e.g., Pisciotta*, 499 F.3d

at 639-40 (dismissing negligence claim against bank that lost plaintiff's PII through a

website security breach because allegations of increased risk of loss from future identity

theft were not compensable harm under Indiana law); *Pinero v. Jackson Hewitt Tax Serv.*

*Inc.*, 594 F.Supp.2d 710, 715-16 (E.D.La. 2009) (potential credit monitoring costs and fear

of loss from future identity theft could not establish damages element of negligence claim,

claim dismissed; applying Louisiana law); *Caudle v. Towers, Perrin, Forster & Crosby,*

*Inc.*, 580 F.Supp.2d 273, 283-84 (S.D.N.Y. 2008) (dismissing negligence claims brought

by an employee whose PII was lost in laptop theft; allegations of increased risk of loss

from identity theft and payment of costs for credit monitoring services and identity theft

insurance did not establish damages to support a negligence claim under New York law,

particularly when plaintiff failed to allege that his PII had actually been accessed or

misused or that the laptop theft was motivated by a desire to access his PII); *Melancon v.*

*Louisiana Office of Stud. Fin. Ass't*, 567 F.Supp.2d 873, 877 (E.D.La. 2008) (dismissing a

negligence claim alleging damages of risk of loss from future identity theft and fear

because such damages were purely speculative and could not establish damages element of

claim; applying Louisiana law); *Kahle v. Litton Loan Servicing*, 486 F.Supp.2d 705, 711-

13 (S.D. Ohio 2007) (dismissing a negligence claim for failure to establish the essential

---

[9] The court also noted that the plaintiffs had not shown any intent to use the PII to commit identity theft, or that anyone accessed their PII from the stolen computers. *Id.* at 1021 n.3.

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

element of damages when the plaintiff had not actually suffered loss from identity theft and her only alleged injury was the expense of purchasing credit monitoring after a data breach); *Guin v. Brazos Higher Ed.*, 2006 WL 288483 at *5-*6 (D.Minn. Feb. 7, 2006) (increased risk of loss from identity theft could not establish the damages element of a negligence claim where laptop containing PII was stolen from employee's home and there was no evidence that any party whose PII could have been on the laptop had actually experienced identity theft as a result; applying Minnesota law).[10]  *See also Ruiz v. Gap, Inc.*, 2009 WL 941162, *4 (N.D.Cal. Apr. 6, 2009) (increased risk of loss from identity theft from data loss was not the "appreciable, nonspeculative, present harm" required to establish the damages element of a negligence claim under California law).

Courts also conclude that plaintiffs in similar data breach cases cannot establish the damages element of their breach of contract claims.  *See, e.g., Shafran v. Harley Davidson Inc.*, 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) (applying New York law; dismissing negligence, contract, and various other claims arising from PII on lost laptop and holding that credit monitoring costs were not an actual and legally cognizable injury); *Hendricks v. DSW Shoe Warehouse Inc.*, 444 F.Supp.2d 775, 780 (W.D. Mich. 2006) (applying Michigan law; dismissing, for failure to establish damages, a breach of contract claim seeking damages for costs incurred for credit monitoring after plaintiff's account numbers and other personal financial information she had provided to the defendant shoe store was stolen).

Courts in other analogous contexts also reject claims for recovery of credit monitoring costs as insufficient to establish damages.  *See, e.g., Aliano v. Texas Roadhouse*

---

[10] *Accord Stollenwerk v. Tri-West Health Care Alliance*,  2005 WL 2465906 at *3 (9th Cir. Nov. 20, 2007) (rejecting under Arizona law claims for recovery of credit monitoring costs by analogy to medical monitoring costs in case where beneficiaries of a health insurance program alleged the local manager negligently failed to secure their PII, resulting in its loss in theft of computer servers; but customer who suffered actual loss when his PII was used to open six retail credit accounts raised genuine issue of fact as to whether data loss caused actual damage).

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 17
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

*Hldg. LLC*, 2008 WL 5397510 at *2-*4 (N.D.Ill. Dec. 23, 2008) (out-of-pocket payments for credit monitoring were not actionable harm under the Fair and Accurate Credit Transaction Act, particularly because "Aliano does not allege than anyone ever obtained his credit card number as a result of Defendants' actions, that his credit card account(s) or bank account(s) were compromised, or that his identity or credit were harmed in any way").

Nor is the mere exposure of personal information to another's view by itself sufficient to establish damages without a further showing of loss from such exposure. *See, e.g., Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001) (phone company's transfer of PII it collected to another company to assist in debt collection does not give rise to damages under Communications Act); *Smith v. Chase Manhattan Bank*, 293 A.D.2d 598, 599-600, 741 N.Y.S.2d 100, 102 (N.Y.App.Div. 2002) (dismissing, for lack of proof of injury, various claims alleging that bank sold customers' private info to telemarketer without customers' consent).

Like other courts considering similar claims, this Court should hold that Plaintiffs cannot establish the damages elements of their claims. Washington courts would reach the same conclusion as the cases above and hold that the damages elements of negligence and breach of contract claims cannot be established by an increased risk of loss from identity theft or by the cost and inconvenience of credit monitoring. Washington law generally rejects damages based on increased risk of potential harm. *See, e.g., Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601, 606 (W.D.Wash. 2001) ("The Washington Supreme Court requires plaintiffs to show a present, existing injury before pursuing a negligence-based cause of action."). *See also Panag v. Farmers Ins. Co. of Wash.*, __Wash.2d __, 204 P.3d 885, 903 (2009) (describing the *Kahle*, *Forbes*, and *Randolf* cases as dealing with "potential future harm," as opposed to the "completed harm" at issue in *Panag* which was actionable).

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 18
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1  D.  The Complaint Does Not State A Claim For Breach Of Contract.

2      Plaintiffs have not stated facts to establish the existence of an implied contract.

3  Their implied contract claim rests on out-of-context snippets from three different

4  documents (the Brochure, the Standards, a Starbucks web page)[11] that do not address

5  collection, retention, or security of PII.  Compl. at ¶ 102.  The Complaint does not even

6  allege that all three documents were read by Plaintiffs, much less understood by them as a

7  contract.

8      An implied contract requires proof of the same elements as an express contract –

9  offer, acceptance, and consideration – evidencing a meeting of the minds and an intent to

10  contract.  *See, e.g., McClung v. City of Sumner,* 548 F.3d 1219, 1229 (9th Cir. 2008),

11  *quoting Milone & Tucci, Inc. v. Bona Fide Builders, Inc.,* 49 Wash.2d 363, 301 P.2d 759,

12  762 (1956).  The burden of proving the existence of a contract is on the party asserting its

13  existence.  *Saluteen-Maschersky v. Countrywide*, 105 Wash. App. 846, 851 (2001).

14      Plaintiffs cannot establish that the three documents formed an implied contract.

15  The Complaint never alleges allege that Plaintiffs saw all three documents, or intended to

16  agree to them, or understood they were contracting on the alleged terms of the implied

17  agreement.[12]  The contract laws of Washington is clear that to be effective, an "offer" must

18  be communicated to the offeree.  *See Farrell v. Neilson*, 43 Wash.2d 647, 650 (1953).[13]

19  ───────────────

20  [11] *See* http://www.starbucks.com/customer/privacy.asp.

21  [12] Indeed, the only allegation that comes close to averring that Plaintiffs even saw any one
     of the documents is the vague suggestion that they provided their Social Security Numbers
22  to Starbucks "[a]ccording to" the Brochure.  Compl. at ¶ 60.  Plaintiffs do not allege that
     they ever saw the Standards or the web page, and it is not clear from their vague allegations
23  whether they claim to have reviewed the Brochure before they provided their Social
     Security Numbers "according to" it.

24  [13] Moreover, Plaintiffs never plead how they "accepted" any offer that was purportedly
     made.  For example, the web page says that "[b]y using our services and viewing this Site,
25  you are consenting to the information collection, use and disclosure practices described in
     this privacy policy."  When an offer prescribes the manner of acceptance, those terms must
26  be complied with in order to create a contract.  *See* Restatement (Second) of Contracts §
     60; *Golden Dipt Co. v. Systems Engineering & Mfg. Co.,* 465 F.2d 215, 216-17 (7th Cir.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 19
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

Plaintiffs' failure to plead facts that could establish formation of an implied contract, including the circumstances under which it was allegedly formed, make it impossible for the finder of fact to infer that there was the necessary meeting of the minds.  *See Caughlan v. Int'l Longshoremen's and Warehousemen's Union*, 52 Wash.2d 656, 660, 328 P.2d 707 (1958) (to prevail on a breach of implied contract claim, a plaintiff must demonstrate that implied contract exists based on the acts of the parties involved and in light of the surrounding circumstances).

Moreover, the Complaint pleads only that Plaintiffs "provided their Social Security Numbers to Starbucks with the understanding that Starbucks would safeguard the information."  Compl. at ¶ 60.[14]  Plaintiffs' subjective intent or understanding cannot create an implied contract.  Rather, there must be a meeting of the minds, i.e., mutual understanding and assent, among all parties on the essential terms.  *See, e.g.*, *Ottgen v. Clover Park Tech. Coll.*, 84 Wash. App. 214, 219, 928 P.2d 1119 (1996).  Accordingly, even if Plaintiffs "hoped" or "expected" that Starbucks would take certain measures to secure their PII, those unexpressed and unassented to "hopes" or "expectations" cannot create a contract.[15]

1972).  Plaintiffs never allege they have even used the Starbucks website, let alone that they "accepted" any purported "offer" by submitting PII through the website.

[14] Plaintiffs' subjective expectations are also incredibly vague.  Plaintiffs' claim that they expected Starbucks to "safeguard" their PII through unspecified methods appears to mean that they essentially expected Starbucks to guarantee that their PII would never possibly be lost under any circumstances – an expectation that cannot be grounded in any of the documents that Plaintiffs rely on to establish the existence of an implied contract, as discussed below.

[15] Merely providing a name, address, and Social Security number to one's employer does not create an implied contract to protect such information.  Federal laws require employers to collect such information from all employees.  *See, e.g.*, 26 C.F.R. § 31.6051-1 & -2 (requiring employers to submit W-2 forms for employees to the Social Security Administration containing name, address, and Social Security number).  Providing information that the law already requires her to provide cannot be sufficient separate consideration to establish a contract between Plaintiff and Starbucks, and she has pled no other consideration.  Moreover, if an employee's subjective expectations about how such information would be treated were enough to form an implied contract, every employer

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 20
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    Even if some implied contract was formed – which it was not – it is plain from the

2    language of the three documents purportedly memorializing the agreement that the terms of

3    the "contract" are <u>not</u> what Plaintiffs allege.[16]   The Brochure (Compl, Ex. D) simply

4    notifies prospective employees that Starbucks may conduct background checks that include

5    social security number verification.  Such disclosures are commonplace, and indeed are

6    required by federal law.  *See* 15 U.S.C. § 1681b(b)(2) (requiring employers to provide

7    "clear and conspicuous" notice to prospective employees of the employer's intent to obtain

8    a consumer report for employment purposes, including to establish the individual's

9    eligibility for employment).  If simply making a federally-mandated disclosure was enough

10   to create the type of implied contract alleged in the Complaint, then *every* employer who

11   followed the law and made the required disclosures would be subjected to such a

12   "contract," essentially writing into law the data security requirements that Plaintiffs attempt

13   to place on Starbucks in this case.

14       Moreover, even if Plaintiffs saw the Brochure (which is not clear from the

15   Complaint) and unilaterally believed that language created certain contractual obligations

16   to safeguard their PII, there is no evidence of a meeting of the minds – nothing in the

17   Brochure addresses safeguarding of PII used for the background check, and Plaintiffs plead

18   no other facts from which a fact-finder could infer a meeting of the minds.[17]

19   would be subject to extensive contractual duties, the burdensomeness of which would be
     limited only by an employee's imagination.  Fortunately, that is not the law.

20
21   [16] The Owner Staffing Services Brochure and the Starbucks Standards of Conduct were
     attached to the Complaint as Exhibits D and F, respectively.  The web site is publicly

22   accessible via the Internet.  It is properly before the Court on this Motion because it was
     discussed extensively in the Complaint.  *United States v. Ritchie*, 342 F.3d 903, 908-09

23   (9th Cir. 2003) (courts determining whether a plaintiff has stated a claim may consider
     documents referenced extensively in the complaint, documents that form the basis of the

24   claim, and matters of judicial notice).  *Accord Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th
     Cir. 2005).

25   [17] The Complaint also quotes a portion of the Brochure stating that "[c]onfidential
     information may be shared on a need to know basis."  Compl. at ¶ 61, quoting Brochure at

26   2.  That excerpt is wildly misleading.  The quoted language is from a footnote to a passage
     telling employees that they have a duty to report illegal or inappropriate conduct to

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 21
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

1    Similarly, the Standards (Compl., Ex. F) say nothing about the collection, retention,

2    or security of employee PII.  Of course Starbucks wants its employees to treat each other

3    with dignity and to respect one another's privacy (*see* Compl. at ¶ 63), but the language

4    cited in the Complaint talks about workplace conduct and has nothing to do with employee

5    PII.  (Compl., Ex. F at 4.)  The "Confidential Materials" passage cited in paragraph 64 of

6    the Complaint is actually a subsection to the "Intellectual Property and Proprietary

7    Information" section of the Standards, which discusses employees' appropriate use of the

8    confidential intellectual property of Starbucks and its competitors.  (*Id.* at 15.)  That section

9    has nothing to do with employee PII either.  Not only was there no meeting of the minds on

10   the Standards (Plaintiffs do not claim they even saw them), but there are no terms to

11   possibly agree on regarding PII.

12   The web page identified in the Complaint likewise cannot form an implied contract.

13   The web page is limited in scope to collection of PII through certain channels only

14   (Starbucks.com offerings and in-store promotions).[18]  The Complaint itself acknowledges

15   that the web page refers to *customers'* PII.  Compl. at ¶ 66.  The web page cannot promise

16   to protect employee PII that it does not even address.

17

18

_____

19   Starbucks, and that such reports may be made confidentially.  *See* Brochure at 2.  It has
     nothing to do with PII or data security generally.

20   [18] The opening paragraph of the Privacy Statement (which is not quoted in the Complaint)
     explains the limited scope of the Privacy Statement:

21

22        This privacy policy describes the information Starbucks collects through the
          services available on our web site, Starbucks.com and other Starbucks
          owned or operated web sites that link to this policy (collectively, the "Site"),
23        through our Starbucks Card Programs and the point of sale system in our
          retail environments, and how we use that information. Our policy also
24        describes the choices you can make about how we collect and use your
          information.   By using our services and viewing this Site, you are
25        consenting to the information collection, use and disclosure practices
          described in this privacy policy.

26   *See* http://www.starbucks.com/customer/privacy.asp.

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 22
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    In order to establish a claim for breach of contract, a plaintiff must point to a

2    specific provision of the contract that was allegedly breached. *See, e.g., Elliott Bay*

3    *Seafoods, Inc. v. Port of Seattle*, 124 Wash. App. 5, 12, 98 P.3d 491, 494 (2004) (granting

4    summary judgment because plaintiff "cannot point to any specific provision of the lease

5    that was breached"); *Oliver v. Flow Int'l Corp.*, No. 57382-9-I, 2006 WL 3707865, at *2

6    (Wash. App. Ct. Dec. 18, 2006) (affirming grant of summary judgment where plaintiff

7    could not establish a breach of an express provision of the contract); *Talbert v. Homes*

8    *Savings of America* , 638 N.E.2d 354, 358 (Ill. App. 1994) (holding that a mortgage

9    borrower failed to state a cause of action for breach of contract based on the difference

10   between the advertised terms of a contract and the terms of his actual contract; "A breach

11   can only exist where a party fails to carry out a term, promise or condition of a contract...").

12   Plaintiffs cannot point to any specific contractual promise that was breached, only that their

13   subjective expectations were allegedly not met.  That is insufficient.  Plaintiffs' implied

14   contract claims fail as a matter of law.

15   E.    <u>The Economic Loss Rule Bars Plaintiff's Negligence Claims.</u>

16          The economic loss rule bars Plaintiffs from recovering damages on their negligence

17   claim.  The Complaint alleges "damages" of costs of credit monitoring and possible future

18   loss from identity theft.  Compl. at ¶ 99.  Plainly all of these are purely economic injuries.

19   *See Alejandre v. Bull*, 159 Wash.2d 674, 681, 153 P.3d 864, 868 (2007) (economic loss rule

20   bars recovery for alleged breach of tort duties where a contractual relationship exists and the

21   losses are economic losses, regardless of how the plaintiff characterizes the claims).

22          Several courts considering data loss cases similar to those brought by Plaintiffs have

23   held that the economic loss rule bars recovery of damages on negligence claims.  *See*

24   *Banknorth N.A. v. BJ's Wholesale*, 442 F.Supp.2d 206, 211-14 (M.D.Pa. 2006) (economic

25   loss doctrine barred recovery in negligence of damages for issuing new debit cards and

26   reimbursement to cardholders who suffered unauthorized charges after third parties

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 23
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    allegedly hacked into a computer file maintained by BJ's and obtained credit account

2    information for plaintiff's customers; applying Maine law); *In re TJX*, 524 F.Supp.2d 83,

3    90-91 (D.Mass. 2007) (same, applying Massachusetts law); *Pennsylvania State Employees*

4    *Credit Union v. Fifth Third Bank*, 398 F.Supp.2d 317, 326-30 (M.D.Pa. 2005) (same,

5    applying Pennsylvania law).  This Court should reach the same conclusion.

6                            IV.    <u>CONCLUSION</u>

7            Plaintiffs' Complaint fails to state a claim on which relief can be granted.  Plaintiffs

8    have suffered no cognizable damages; indeed, the type of injuries Plaintiffs allege are not

9    even sufficient to get them through the courthouse door.  Even if they had standing,

10   Plaintiffs cannot establish a critical element of each of their claims.  This Court should

11   reach the same conclusion as the legion of courts that have considered similar claims and

12   dismiss Plaintiffs' claims with prejudice and without leave to amend, as amendment would

13   be futile.

14           DATED this 7th day of May, 2009.

15

16                                   s/Karl J. Quackenbush
                                     Karl J. Quackenbush, WSBA #9602
17                                   Gavin W. Skok, WSBA #29766
                                     Merkys I. Gómez, WSBA #40000
18                                   RIDDELL WILLIAMS P.S.
                                     1001 Fourth Avenue, Suite 4500
19                                   Seattle, WA  98154
                                     Tel:  (206) 624-3600
20                                   Fax: (206) 389-1708
                                     Email:  kquackenbush@riddellwilliams.com
21                                   Email:  gskok@riddellwilliams.com
                                     Email:  mgomez@riddellwilliams.com
22
                                     Attorneys for Defendant
23                                   STARBUCKS CORPORATION

24

25

26

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 24
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on May 7, 2009, I caused to be electronically filed the

3  foregoing with the Clerk of the Court using the CM/ECF system which will send

4  notification of such filing to the registered CM/ECF users in this case.

5                                      s/Karl J. Quackenbush
                                       Karl J. Quackenbush, WSBA #9602
6                                      Gavin W. Skok, WSBA #29766
                                       Merkys I. Gómez, WSBA #40000
7                                      RIDDELL WILLIAMS P.S.
                                       1001 Fourth Avenue, Suite 4500
8                                      Seattle, WA  98154
                                       Tel:  (206) 624-3600
9                                      Fax: (206) 389-1708
                                       Email:  kquackenbush@riddellwilliams.com
10                                     Email:  gskok@riddellwilliams.com
                                       Email:  mgomez@riddellwilliams.com
11
                                       Attorneys for Defendant
12                                     STARBUCKS CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT - 25
CASE NO. C09-0216 RAJ
4845-3718-5539.05
050709/1655/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600