1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAURA KROTTNER and ISHAYA SHIMASA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>STARBUCKS CORPORATION, a Washington corporation,<br><br>        Defendant. | No. C09-0216 RAJ<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>**NOTE ON MOTION CALENDAR: JUNE 5, 2009**<br><br>**ORAL ARGUMENT REQUESTED** |

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ)
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1
2
3
4
5
6
7

Plaintiffs do not dispute one key fact:  Taking the allegations as pled in the Amended Complaint ("Complaint") as true, they have not suffered any actual loss from identity theft.  As pled, the Complaint describes Plaintiffs who are concerned that they might suffer actual loss from future identity theft and have taken steps to reduce that perceived risk, e.g., by purchasing credit monitoring (Lalli) or by watching their bank accounts (Krottner).  Even Mr. Shimasa, who believes that his PII was used in an attempt to open a bank account, suffered no loss because the alleged "attempt" was caught and quickly remedied.[1]

8
9
10
11
12
13
14
15
16
17
18

Starbucks' motion squarely poses the issue of whether Plaintiffs' concern over potential damage from possible future identity theft is enough to state a claim.  The majority of decided cases say it is not.  Many courts hold that such fear of future harm cannot establish the damages element on the merits of the claims pled by Plaintiffs.  Others hold that such alleged damages are not even enough to create the standing necessary to get through the courthouse door.  Surely, if any court anywhere had allowed negligence or breach of contract cases arising from alleged data breaches on similar facts to go forward, Plaintiffs would have cited it in their Opposition.  They didn't.  Rather than answer the overwhelming authority holding that their damages theory is simply not viable, Plaintiffs essentially ignored it.  Instead, they argue by analogy to unanalogous cases that this Court should set out on its own and make new law.  Plaintiffs' argument fails.

## I.      Plaintiffs Have Suffered No Actual And Existing Injury

19
20

### A.      *The Authority Rejecting Plaintiffs' Damages Theory Is Not Only Weighty, But Also Correct*

21
22

Starbucks' motion discussed fifteen cases in which "data breach" claims similar to those brought by Plaintiffs were dismissed for lack of standing or lack of damages.

23
24
25
26

[1] As pointed out in Starbucks' opening brief, Plaintiffs' conclusory allegations of harm and causation as to Mr. Shimasa fail to meet the pleading standards set for in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) and therefore are entitled to no deference. *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (*quoting Twombly*, 550 U.S. at 555).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 1
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   Plaintiffs' Opposition briefly mentions six of them and ignores the other nine.  Plaintiffs'

2   short attempts to address those six cases are unpersuasive and unavailing.

3           For example, Plaintiffs argue *Bell v. Axciom Corp.*, 2006 WL 2850042 (E.D. Ark.

4   Oct. 3, 2006) and *Giordano v. Wachovia Sec. LLC*, 2006 WL 2177036 (D.N.J. July 31,

5   2006) are distinguishable because the plaintiffs in those cases did not know whether their

6   information had been stolen or merely "lost."  That is a distinction without a difference.

    Those plaintiffs made – and those courts rejected – the same "enhanced risk" arguments
7
    that Plaintiffs make against Starbucks.  The result was dismissal.  Nothing in either opinion
8
    indicates the result would be different if the data had been stolen; indeed, Starbucks cited
9
    several other cases in its opening brief that rejected the same "enhanced risk" damages
10
    theory even where the PII *was* stolen instead of merely lost.  Moreover, Plaintiffs'
11  Complaint does not allege that the Starbucks' laptop was stolen in order to gain access to

12  their PII.  The Complaint provides no reason to think the theft was anything other than the

13  ordinary property crime it appears to be.  Like the plaintiffs in *Bell* and *Giordano*, Plaintiffs

14  here simply fear they are at risk of future identity theft because their PII is no longer in

15  their exclusive control.

16          Starbucks' opening brief also pointed out that the *Key v. DSW, Inc.*, 454 F.Supp.2d

    684 (S.D. Ohio 2006) case recognized that "courts have embraced the general rule that an
17
    alleged increase in risk of future injury is not an 'actual or imminent' injury."  Plaintiffs do
18
    not dispute the *Key* court's assessment of the state of the law or its application or the
19
    general rule to deny standing on similar facts.  Instead, Plaintiffs mention *Key* only to urge
20
    the Court to disregard it in favor of the minority analysis applied in *Pisciotta v. Old Nat'l*
21  *Bancorp*, 499 F.3d 629 (7th Cir. 2007) and *Ruiz v. Gap Inc.*, 2009 WL 941162 (N.D. Cal.

22  Apr. 6, 2009) ("*Ruiz II*").  Plaintiffs broadly read those cases, along with *Caudle v. Towers,*

23  *Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273 (S.D.N.Y. 2008) and *Brittingham v.*

24  *Cerasimo, Inc.*, 2009 WL 1010427 (N.D. Ind. Apr. 14, 2009), for the proposition that

25  increased risk of actual harm from future identity theft is enough to establish standing.

    Plaintiffs are wrong.  First, the *Brittingham* case does not even deal with data breaches like
26

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 2
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

those alleged here.  It is expressly limited to statutory damages for "willful violations" of the Fair and Accurate Credit Transaction Act.  *Id.* at \*3.  The *Brittingham* court even rejected an analogy to *Pisciotta*, saying the analysis in that case was inapplicable to the pending statutory claims.  *Id.*

Moreover, as explained in Starbucks' opening brief, Plaintiffs encourage this Court to disregard the "general rule" in favor of a minority holding that lacks solid footing in Ninth Circuit law.[2]  The Ninth Circuit has been clear that a plaintiff lacks standing when his or her alleged injury "relies upon a chain of speculative contingencies" that may or may not occur.  *Nelson v. King County*, 895 F.2d 1248, 1252 (9th Cir. 1990).  That is exactly the case here.  The thief may or may not be aware of, or able to access, PII on the stolen laptop.  He or she may or may not review or care about these particular Plaintiffs' PII.  He or she may or may not try to use it to commit credit fraud or identity theft.  Those attempts might be unsuccessful, or they might work and cause actual losses.[3]  But unless and until such actual losses occur, Plaintiffs have suffered no present and identifiable injury actionable in this Court.

Plaintiffs cite two other cases in support of their argument that increased risk of future harm is sufficient to confer standing, *Witriol v. LexisNexis Group*, 2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) and *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965 (C.D. Cal. 2007).  Neither case involved an alleged "data breach."  The court in *Witriol* stated only that the plaintiff's allegations of unspecified "economic and emotional injuries" (which were not described in the opinion) could

---

[2] As pointed out in Starbucks' opening brief, *Ruiz II* relied on the Ninth Circuit's decision in *Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002), in holding that increased risk of harm was sufficient, but *Central Water Delta* was limited to the unique circumstances of environmental harm and involved a harm that was <u>certain</u> to occur though the <u>timing</u> was unknown.  *See* 306 F.3d at 948-49.  *Ruiz* is also factually distinct because the plaintiffs in that case alleged that the theft was committed for the purpose of stealing their PII.  Here, Plaintiffs plead no reason to think that the theft of the Starbucks' laptop was anything more than an ordinary property crime.

[3] Notably, the laptop theft is alleged to have occurred eight months ago in October 2008.  Compl. ¶ 20.  The Amended Complaint does not identify anyone who has actually suffered any resulting loss from identity theft despite the passage of that time.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 3
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

support a negligence claim under California law.  It never held (or even suggested) that mere increased risk of someday suffering economic damages from future identity theft was sufficient.  *Witriol*, at \*8.  The plaintiff in *Arcilla* sought only statutory damages under the Fair and Accurate Credit Transactions Act, and the court never held that increased risk of identity theft was sufficient "injury in fact" to establish standing or support non-statutory claims seeking recovery of *actual* damages.  *Arcilla*, at 972.  Plaintiffs vastly over-read both cases.

B. *The Possibility Of Mere Exposure Of Plaintiffs' PII To The View Of Others Does Not Create Standing*

Plaintiffs appear to argue that the mere possibility that their PII was exposed to another's view[4] is a sufficient injury-in-fact in the form of harm to their alleged interest in keeping their Social Security numbers private.[5]  (Opp. at 7, Dkt. No. 23).  There is no support for this novel proposition.  Plaintiffs are asking the Court to go against the great weight of authority and create new law that essentially eliminates their requirement to prove harm and makes *any* chance of exposure of PII an actionable injury *per se*.  The law is clear that fear or concern resulting from exposure of PII *is not* a sufficient injury, so Plaintiffs take it back a step to argue that the mere prospect of exposure *is* sufficient injury regardless of whether it creates fear or concern.  How could that be?  If that was the law, then the fifteen courts cited in Starbucks' opening brief must be wrong in holding that fear or concern caused by exposure of PII does not establish a viable claim.  Plaintiffs' motive of avoiding overwhelming authority is transparent, their logic backward.

---

[4] Even if exposure was, by itself, an injury – which it is not – plaintiffs do not expressly allege that their PII has actually been exposed to anyone other than Starbucks as a result of the theft of the Starbucks' laptop.  Plaintiff Shimasa claims that his Social Security number was used in an attempt to open an account, but he does not allege facts necessary to establish any causal connection between the laptop theft and that attempt, e.g., that the person who attempted to open the account obtained his Social Security number from the laptop as opposed to some other source, etc.

[5] It is unclear whether Plaintiffs are actually making that argument, as they claim later in that same argument section that "the loss of *and misuse of* one's Social Security number is sufficient harm to one's person and privacy to demonstrate …. standing."  *See* Opp. at 7 (emphasis added).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 4
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1
2
3
4
5
6
7
8
9
10
11
12

Plaintiffs also completely ignore the cases cited in Starbucks' motion holding that mere exposure of PII to another's view without a showing of further harm is insufficient to establish damages. *See Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001); *Smith v. Chase Manhattan Bank*, 293 A.D.2d 598, 741 N.Y.S.2d 100 (N.Y.App.Div. 2002). *See also In re JetBlue Airways Corp. Privacy Litig.*, 379 F.Supp.2d 299, 328-29 (E.D.N.Y. 2005) (alleged loss of privacy from defendants' sale of customers' private information to data mining company, without more, did not constitute injury). Instead, Plaintiffs simply make the conclusory assertion that their claimed privacy interest in their PII is "elemental" and cite a handful of cases that say a Social Security number is private information and can be misused.[6] But the fact that an Social Security number might *possibly* be misused does not mean that it *has been* or *will be* or that such use will cause harm. Plaintiffs have certainly not alleged that they have suffered actual loss from identity theft due to misuse of their Social Security numbers.

13
14
15
16
17
18

In terms of Plaintiffs' allegations of actual injury, Plaintiffs are exactly where they were the day before the laptop was stolen from Starbucks. They have suffered no actual loss from identity theft. They do allege worry, they do allege concern, and they do allege they have spent some time trying to allay their concerns. And they do have credit monitoring available, courtesy of Starbucks. But they do not have any actual present loss created by misuse of their PII so they have no standing.

19
20

## II.   Plaintiffs Cannot Establish The Damages Elements Of Their Negligence And Breach Of Contract Claims

Instead of explaining how they have plead sufficient damages or distinguishing this

21
22
23
24
25
26

---

[6] *See* Opp. at 7.  Neither the three Washington cases nor the statute that Plaintiffs cite in support of their argument establish that the mere disclosure of one's Social Security number is *by itself* an injury-in-fact sufficient to create standing for an action in negligence or breach of contract. *See State v. Boland*, 115 Wash. 2d 571, 800 P.2d 1112 (1990) (excluding evidence taken from defendant's garbage because of the defendant's privacy interest); RCW 9.35.001 (statute establishing crime of identity theft); *City of Kirkland v. Sheehan*, 2001 WL 1751590 (Wash. Super. May 10, 2001) (finding that defendant did not have a first amendment right to publish numerous individuals' social security numbers on the internet); *State v. Mayze*, 280 Ga. 5 (2005) (finding venue provision in identity fraud statute constitutional).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 5
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   case from the considerable precedent cited in Defendant's Motion to Dismiss, Plaintiffs

2   resort to creative case quotation and misdirection in the vain hope that the court will permit

3   their untenable-at-law claims to survive the Motion to Dismiss and reach a jury.

4       Plaintiffs argue that *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885 (2009)

5   establishes that credit monitoring costs can establish the damages element of a negligence

6   claim under Washington law.  Plaintiffs selectively excerpt a snippet from *Panag* stating,

    "[t]he expenses incurred by the plaintiffs to monitor their credit represent a completed

7   harm."  (Opp. at 12-13, *citing id.* at 903).  In doing so, Plaintiffs entirely ignore the

8   preceding paragraph, which stated that "data breach" cases like this one "involv[ed]

9   plaintiffs seeking compensation for the cost of monitoring their credit to avoid a *potential*

10  harm resulting from the alleged negligent failure to secure the plaintiffs' personal

11  information," and explained that the *Panag* plaintiffs "do not seek recovery of this type of

12  expense as a prophylactic measure against some potential future harm."[7]  Similarly,

13  Plaintiffs here seek mere "prophylactic measure[s] against some potential future harm" that

14  are not compensable under Washington law.

15      Plaintiffs also argue that *Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601 (W.D.

16  Wash. 2001), allows medical monitoring damages to be awarded if the elements of a

    negligence claim are established.  (Opp. at 12).  But *Duncan* only allowed such damages if

17  an <u>existing</u> injury is shown and rejects enhanced risk arguments as insufficient to establish

18  the damages element of a negligence claim.  *Id.* at 606-07 ("The Washington Supreme

19  Court requires plaintiffs to show a present, existing injury before pursuing a negligence-

20  based cause of action.  An enhanced risk . . . is not enough. . . .") (internal citations

21  omitted).  Plaintiffs here have not suffered any existing injury; they merely fear they may

22

23  ---
    [7] *Id.* (emphasis added)., *citing Kahle v. Litton Loan Servicing, LP*, 486 F. Supp. 2d 705,
    713 (S.D. Ohio 2007); *Forbes v. Wells Fargo Bank*, 420 F. Supp. 2d 1018 (D. Minn.
24  2006); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007).
    Plaintiffs also cite *Stephens v. Omni Ins. Co.*, 138 Wash. App. 151 (2007) in arguing that
25  "time and expense" of their preventive measures can be recovered, *see* Opp. at 9, but
    *Stephens* was consolidated with another case in the *Panag* Supreme Court decision, which
26  distinguished such prophylactic measures.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 6
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1   be harmed by future identity theft.[8]  And, despite arguing that increased risk can establish

2   the damages element of a negligence claim, Plaintiffs never address or dispute the cases

3   cited in Starbucks' opening brief holding that increased risk is never enough to establish

4   the damages element of breach of contract claims.  *See* Motion at 15-18 and cases cited

5   therein.

6           Plaintiffs also assert that "courts have routinely held" that time and money spent

7   monitoring bank accounts and buying credit monitoring services constitutes damages under

8   state law.  (Opp. at 13 n.4).  But none of the cases cited by Plaintiffs apply Washington

9   law, none of them involve the type of "data breach" allegations made against Starbucks

10   here, and none of them even support the proposition that Plaintiffs cite them for.[9]  For

11   example, in *Jones v. Commerce Bancorp, Inc.*, 2006 WL 1409492, *1-*2 (S.D.N.Y.

12   May 23, 2006), the plaintiff alleged that her bank allowed fraudulent withdrawals from her

13   account, which resulted in actual and present loss from the cancellation of a business

14   insurance policy and substantial lost income and business revenues.  In *Kuhn v. Capital

15   One Fin. Corp.*, 2006 WL 3007931, *1 & *3 (Mass. App. Ct. Oct. 23, 2006), the plaintiff

16   alleged that the theft of her account and personal information from her bank resulted in the

17   opening of 18 different fraudulent accounts in her name in a matter of days after the theft,

18   requiring her to spend considerable money and time to close the accounts, deal with a

19   criminal investigation into the theft, and take other reparative steps.  *EMC Mortgage Corp.

20   v. Jones*, 252 S.W.2d 857, 866 (Tex. App. 2008), was a wrongful foreclosure claim where

21   the plaintiff had suffered past damage to his credit and had been denied home financing

22   due to the listing of an invalid foreclosure on his credit report.  The *McKeown v. First

23   Interstate Bank*, 194 Cal. App. 3d 1225 (1987), case discusses an award of attorney fees in

24   a legal malpractice action.  *Id.* at 1229 (*citing Budd v. Nixen*, 6 Cal. 3d 195, 201-02

---

[8] Plaintiffs' citation to *Meissner v. City of Seattle*, 14 Wash. App. 457 (1975) is inapposite
for the same reason.  The plaintiff in that case *had* suffered a present injury and merely
sought to have his medical bills paid – an unremarkable damages proposition.

[9] Indeed, the fifteen "data breach" cases on similar facts discussed in Starbucks' motion all
found insufficient injury and dismissed.  Dismissal, if anything, is "routine."

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 7
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1    (1971)).  All of these cases involved actual and present injury, and none held that mere risk

2    of future injury was sufficient.

3            Plaintiffs' fear, and thus their alleged damages, is based on their subjective belief

4    that they are at increased risk of identity theft.  But Washington courts consistently reject

5    causes of action based solely on enhanced risk without a present injury.  *Gazija v. Nicholas*

     *Jerns Co.,* 86 Wash. 2d 215, 219, 543 P.2d 338, 341 (1975) ("Actual loss or damage is an
6
     essential element in the formulation of the traditional elements necessary for a cause of
7
     action in negligence. . . .  The mere danger of future harm, unaccompanied by present
8
     damage, will not support a negligence action.") (internal citations omitted).  Plaintiffs have
9
     not shown that they have been damaged in a manner sufficient to support an action under
10
     Washington law.

11   **III.    Plaintiffs' Breach Of Contract Claim Fails**

12           Plaintiffs' breach of contract claim is a hodge-podge of ill-defined "obligations"

13   cobbled together from three separate documents that none of the plaintiffs allege they

14   actually saw or relied on in providing their PII.[10]

15           *A.      Plaintiffs Have Not Established That Any Contract Was Formed*

16           Plaintiffs' Opposition ignores the gaping hole in the middle of their contract theory:

17   Plaintiffs never allege that they saw all three documents forming their purported contract

     with Starbucks, much less that they understood those three documents as a contract or
18
     provided their PII to Starbucks pursuant to that alleged "contract."  Accordingly, no "offer"
19
     could have been made or accepted, and no contract formed.
20
             Plaintiffs try to assert their way around that problem in their Opposition by arguing
21
     that the Complaint sufficiently alleges an offer was communicated to them (*see* Opp. at
22
     19:25-26), but Plaintiffs include no citation to the Complaint where that is actually alleged.
23
     At most, the Complaint alleges that Plaintiffs provided their Social Security numbers to
24
     Starbucks "with the understanding that Starbucks would safeguard the information,"
25
     ──────────────
     [10] Plaintiffs allege their contracts are contained in the Starbucks' Owner Staffing Services
26   Brochure, its Standards of Business Conduct, and a page on its website.  Compl. ¶ 101.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS                    Riddell Williams P.S.
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 8                        1001 FOURTH AVENUE
4822-5090-4323.03                                                         SUITE 4500
060509/1116/62533.00004                                           SEATTLE, WA 98154-1192
                                                                       206.624.3600

1

2

3

4

5

6

Compl. at ¶ 60.  It gives no source for that "understanding."  If the source is Plaintiffs' *subjective* belief, their claim fails because Washington follows the objective manifestation theory of contracts, which interprets contracts based solely on the parties' objective manifestations, i.e., the plain language of the contracts.  *BNC Mortgage, Inc. v. Tax Pros, Inc*., 111 Wash. App. 238, 249-50, 46 P.3d 812, 819 (2002); *Multicare Med. Ctr. v. State Dept. of Soc. & Health Servs*., 114 Wash. 2d 572, 586-87, 790 P.2d 124, 132-33 (1990).

7

8

9

10

11

12

If Plaintiffs' "understanding" was based on the express language of the purported contract documents, the burden is on Plaintiffs to identify that specific language and allege they saw it and accepted it.  *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wash. App. 743, 162 P.3d 1153, 1165 (2007).  Plaintiffs patently fail to carry that burden because the Complaint never alleges that Plaintiffs saw all three documents, or intended to agree to them, or understood they were contracting on the alleged terms of the implied agreement.

13

14

B.    *As A Matter Of Law, The Purported "Contract" Does Not Impose The Obligations Alleged In The Complaint*

15

16

17

18

19

Plaintiffs claim their contract is contained in Starbucks' Owner Staffing Services Brochure ("Brochure"), its Standards of Business Conduct ("Standards"), and a page on its website.[11]  Certainly if their contract is in those three documents, the contractual terms that Plaintiffs claim were breached must also be in there somewhere.  *Agnew v. Lacey Co-Ply*, 33 Wash. App. 283, 288, 654 P.2d 712 (1982) (the court "may not create a contract for the parties which they did not make themselves.").

20

21

22

23

24

25

As Starbucks previously pointed out, none of the three documents expressly impose the obligations that Plaintiffs claim were breached.  The Brochure merely gives prospective employees legally-required notice that Starbucks may perform a background check, including Social Security number verification.  It says nothing about the retention or security of such information.  Incredibly, Plaintiffs argue in their Opposition that a passage in the Brochure stating that "confidential information may be shared on a need to know

26

[11] *See* Compl. ¶ 101.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 9
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

basis" establishes by implication that Starbucks "will protect its employees' PII from disclosure or loss." (Opp. at 4). It is difficult to imagine a greater exaggeration or misreading of that language, which is included in a footnote to a section of the Brochure advising employees of their duty to report illegal or inappropriate conduct to Starbucks and stating that such reports may be made confidentially. (*See* Brochure at 2, Compl., Ex. D). It has nothing to do with PII or data security generally.

The Standards similarly do not address the collection, retention or security of employee PII, notwithstanding Plaintiffs' attempts to contort their plain language and insert new provisions. For example, Plaintiffs' assertion that the reference to respecting "the information of others" in the "Confidential Materials" section refers to employee PII ignores the rest of that section, which discusses corporate espionage and the confidential information of Starbucks' competitors and former employers. *See* Standards at 14 (Compl., Ex. F). Plaintiffs misquote other portions the Standards when they argue that the "Partner Privacy and Personal Activities" or "Workplace Security and Violence Prevention" sections create implied obligations to protect employee PII; those sections also have nothing to do with PII. Even if Plaintiffs subjectively interpreted the Brochure or the Standards as promises that Starbucks would take certain steps to protect their PII, such obligations are patently not contained in the plain objective language that governs this Court's interpretation of those documents.

Plaintiffs argue that the web page "clarifies" Starbucks' alleged promise to protect their PII, at least when they are acting in their capacity as customers. Plaintiffs appear to concede through those allegations that the web page is *not* part of the contract pursuant to which they provided their PII when seeking employment or as employees. More importantly, Plaintiffs never allege they saw the web page or understood it as making any "contract," either before or after giving their PII to Starbucks when acting as customers.[12]

_____

[12] Plaintiffs could not have seen the web page before supplying their PII to Starbucks at the beginning of their employment. The web page states just under the title that it was "Last Modified May 27, 2008" – long after Plaintiffs began their employment with Starbucks. *See* http://www.starbucks.com/customer/privacy.asp (last viewed May 27, 2009).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 10
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

The web page also expressly restricts its scope to information provided to Starbucks through the web site or a point of sale system, and Plaintiffs never claim they provided their PII as customers through the designated channels.[13]  Plaintiffs' allegation that Starbucks promises on the web site to encrypt all PII it collects from them is demonstrably false by reference to the plain language of the web site, which says only that Starbucks will "encrypt *the pipe* through which personal information, such as credit card numbers, is sent."[14]

The alleged contract documents are not ambiguous, and there are no questions of fact that must be resolved in order to interpret them.  *Dice v. City of Montesano*, 131 Wash. App. 675, 684, 128 P.3d 1253, 1257 (2006) ("Interpretation of an unambiguous contract is a question of law.").  Plaintiffs cannot call something ambiguous when it does not address an issue (PII) and then argue that the ambiguity must be construed against Starbucks.  That would create a contractual prohibition out of whole cloth.  Having alleged that their contract with Starbucks is contained in the three documents, Plaintiffs' claims rise – and fall – by the contents of those documents.  The simple fact is that none of the three documents create a contract with Plaintiffs to protect their PII in the manner alleged in the Complaint.[15]  *See Lehrer v. State, Dep't of Soc. & Health Servs.*, 101 Wash. App. 509, 515, 5 P.3d 722 (2000) ("If the language [of a contract] is clear and unambiguous, the court

18

[13] *See* http://www.starbucks.com/customer/privacy.asp (last viewed May 27, 2009).

19

20

21

22

[14] *Id.*  Even the language Plaintiffs quote in their Opposition simply says that Starbucks aspires to use appropriate measures to protect information.  That is too indefinite to create any enforceable contractual obligation. *Johnson v. Star Iron & Steel Co.*, 9 Wash. App. 202, 206, 511 P.2d 1370 (1973) (to be enforceable, a contract must be "definite enough so that when it is coupled with the acceptance it can be determined, with at least a reasonable degree of certainty, what the nature and extent of the obligation is which the proposer has assumed"); *City of Roslyn v. Paul E. Hughes Const. Co., Inc.*, 19 Wash. App. 59, 65-66, 573 P.2d 385 (1978).

23

24

25

26

[15] Plaintiffs' citation to the *Brotherson  v. Professional Basketball Club, LLC*, 604 F. Supp. 2d 1276 (W.D. Wash. 2009) case for the proposition that they need not show "perfect assent" to establish a contract and need show only a "core of common meaning" is unavailing for the same reason.  The Court still looks to the parties' objective manifestations, *id.* at 1283, and nothing in the plain language of the documents indicates that any common understanding was reached regarding PII, let along the "core of common meaning" required under *Brotherson*.

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 11
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

must enforce the contract as written; it may not modify the contract or create ambiguity where none exists.") (*citing McDonald v. State Farm Fire & Cas. Co.*, 119 Wash. 2d 724, 733, 837 P.2d 1000 (1992)).  Plaintiffs' breach claims fail as a matter of law.

**IV.      Plaintiffs' Negligence Claims Are Barred By The Economic Loss Rule**

The losses allegedly suffered by Plaintiffs are – as they characterize them – "economic damages."  (Opp. at 2).  Accordingly, under the economic loss doctrine, Plaintiffs are barred from recovering damages on their negligence claim.  Plaintiffs admit the economic loss rule limits the parties "to their contract remedies when a loss potentially implicates both contract and tort."  (Opp. at 13).  Plaintiffs attempt to circumvent the economic loss doctrine by claiming their loss is physical in nature and asserting that "more than just dollars are at stake."[16]  *Id.* at 15.  But Plaintiffs alleged only that Starbucks failed to meet their expectation that it would safeguard their PII, putting this case squarely within the rubric of the economic loss doctrine.  As pointed out in Starbucks' opening brief (and conveniently ignored by Plaintiffs in the Opposition), several courts have barred negligence claims under the economic loss doctrine in similar data loss cases.  Motion at 27.[17]

**V.      Conclusion**

For the foregoing reasons and those stated in Starbucks' opening brief, the Court should dismiss Plaintiffs' Amended Complaint with prejudice and without leave to amend. The futility of amendment is demonstrated by the fact that Plaintiffs already had a chance to amend their complaint once after seeing Starbucks' motion, but their Amended Complaint suffers from the same fatal deficiencies as their original Complaint.

---

[16] Plaintiffs find no support for this assertion in the law.

[17] Plaintiffs also incorrectly imply that the economic loss doctrine is limited to products liability cases.  Opp. at 14, n.5; *see, e.g., Berschauer/Phillips Const. Co. v. Seattle School Dist. No. 1*, 124 Wash. 2d 816, 826, 881 P.2d 986, 992 (1994) (applying the economic loss doctrine to bar a tort claim arising out of a delay in contract performance).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 12
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

1

2          DATED this 5th day of June, 2009.

3
                                          s/ Karl J. Quackenbush
4                                         Karl J. Quackenbush, WSBA #9602
                                          Gavin W. Skok, WSBA #29766
5                                         Merkys I. Gómez, WSBA #40000
                                          RIDDELL WILLIAMS P.S.
6                                         1001 Fourth Avenue, Suite 4500
                                          Seattle, WA  98154
7                                         Tel:  (206) 624-3600
                                          Fax: (206) 389-1708
8                                         Email:  kquackenbush@riddellwilliams.com
                                          Email:  gskok@riddellwilliams.com
9                                         Email:  mgomez@riddellwilliams.com

10                                        Attorneys for Defendant
                                          STARBUCKS CORPORATION
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 13
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2009, I caused to be electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the registered CM/ECF users in this case.

<div style="margin-left:40%">

s/Karl J. Quackenbush
Karl J. Quackenbush, WSBA #9602
Gavin W. Skok, WSBA #29766
Merkys I. Gómez, WSBA #40000
RIDDELL WILLIAMS P.S.
1001 Fourth Avenue, Suite 4500
Seattle, WA  98154
Tel:  (206) 624-3600
Fax: (206) 389-1708
Email:  kquackenbush@riddellwilliams.com
Email:  gskok@riddellwilliams.com
Email:  mgomez@riddellwilliams.com

Attorneys for Defendant
STARBUCKS CORPORATION

</div>

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT (CASE NO. C09-0216 RAJ) - 14
4822-5090-4323.03
060509/1116/62533.00004

Riddell Williams P.S.
1001 FOURTH AVENUE
SUITE 4500
SEATTLE, WA 98154-1192
206.624.3600