HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAURA KROTTNER, et al.,

    Plaintiffs,

    v.

STARBUCKS CORPORATION,

    Defendant.

CASE NO. C09-0216RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on two motions. Plaintiffs move (Dkt. # 13) to consolidate this case with *Lalli v. Starbucks Corporation*, Case No. C09-389RAJ, a similar action pending before this court. Defendant Starbucks Corporation ("Starbucks") has moved (Dkt. # 21) to dismiss Plaintiffs' complaint for failure to state a claim. Plaintiffs did not request oral argument on either motion. For the reasons stated below, the court GRANTS Starbucks' motion to dismiss, dismisses this action, and directs the clerk to enter judgment for Starbucks. This disposition makes it unnecessary to decide the motion to consolidate, and the court DENIES that motion as moot. The court will enter a separate order in the *Lalli* action dismissing it for the reasons stated herein.

## II. BACKGROUND

The court's summary of the facts underlying this action come solely from the allegations of Plaintiffs' Amended Class Action Complaint ("Complaint"), which the

ORDER – 1

1   court will cite using bare "¶" symbols. Starbucks, the ubiquitous coffee retailer, stored
2   the personal information of approximately 97,000 employees on a laptop computer. ¶ 20.
3   In October 2008, someone stole the laptop. *Id.* The complaint reveals virtually nothing
4   about the theft, except that Starbucks claims to have reported it to the Seattle Police. ¶¶
5   24-27, Ex. A. The personal information on the laptop included the name, address, and
6   social security number for each employee. ¶ 21.

7     Plaintiff Laura Krottner is a current Starbucks employee. Her information was on
8   the laptop. ¶ 17. Plaintiff Ishaya Shamasa worked at Starbucks until September 2008,
9   and his information was also on the laptop. ¶ 18. Joseph Lalli, who is the sole Plaintiff in
10  the materially identical *Lalli* action and is represented by the same counsel as Ms.
11  Krottner and Mr. Shamasa, worked at Starbucks until January 2009. Lalli Compl., Case
12  No. C09-389 (Dkt. # 23), ¶ 17. His information was also on the laptop. *Id.*

13    Less than a month after the theft, Starbucks sent a letter to employees whose
14  information was on the laptop. It advised them that although it had "no indication that
15  the private information has been misused," they should "take appropriate steps to protect
16  [themselves] against potential identity theft." Compl., Ex. A. Starbucks also made a year
17  of "credit watch" services available to all interested employees at no cost. *Id.* It referred
18  employees to identity theft protection literature from the Federal Trade Commission. *Id.*

19    Each of the three Plaintiffs has taken some action to reduce the risk that their
20  information will be misused in the wake of the laptop theft. Both Ms. Krottner and Mr.
21  Shamasa signed up for the free one-year credit monitoring service that Starbucks offered.
22  ¶¶ 30, 33. Ms. Krottner and Mr. Lalli have expended time personally monitoring various
23  financial accounts more frequently than they had previously, and intend to continue to do
24  so. ¶ 31; Lalli Compl. ¶ 29. Mr. Lalli has already paid for a credit monitoring service,
25  although he does not explain why he declined to use the free service that Starbucks
26  offered. Lalli Compl. ¶ 30. Ms. Krottner avers that she will pay for a credit monitoring
27  service upon the expiration of the one-year service for which Starbucks paid. ¶ 32.
28  ORDER – 2

Only Mr. Shamasa alleges that his information has been misused. A bank informed him in December 2008 that someone had attempted to open up a new account with his social security number. ¶ 34. The bank closed the account, and there is no allegation that Mr. Shamasa suffered any financial loss. *Id.* Although there is no direct evidence that the person who opened the account used information from the stolen laptop, Mr. Shamasa had never been the target of a similar scheme before. ¶ 35. Mr. Shamasa also notes that the credit monitoring service that Starbucks provided did not alert him about the unauthorized bank account. ¶ 34.

All three Plaintiffs claim that Starbucks breached an implied contract to protect their personal information, and acted negligently in failing to better secure their information. They hope to pursue these claims on behalf of a class consisting of all persons whose personal information was on the stolen laptop, although no one has yet moved to certify a class. Starbucks moves to dismiss Plaintiffs' claims.

### III. ANALYSIS

The court need only reach two of the arguments Starbucks raises in its motion to dismiss. First, Starbucks contends that the court lacks subject matter jurisdiction because Plaintiffs have no injury to satisfy the requirements of Article III of the Constitution. Second, it argues that Plaintiffs have suffered no injury sufficient to support either a negligence or breach of implied contract claim. The court's disposition today does not require it to address Starbucks' arguments that Washington's economic loss rule means that Plaintiffs cannot prevail on a negligence claim and that Plaintiffs have not adequately pleaded an implied contract.

Starbucks invokes only Fed. R. Civ. P. 12(b)(6), and the court must therefore assume the truth of all of Plaintiffs' factual allegations, and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). Plaintiffs must make enough factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If they do

ORDER – 3

1  so, their complaint will survive dismissal as long as there is "any set of facts consistent
2  with the allegations in the complaint" that would entitle the Plaintiffs to relief. *Id.* at 563;
3  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("When there are well-pleaded factual
4  allegations, a court should assume their veracity and then determine whether they
5  plausibly give rise to an entitlement to relief."). The court typically cannot consider
6  evidence or allegations beyond the four corners of the complaint, although it may rely on
7  a document to which the complaint refers as long as the document is central to the party's
8  claims or defenses and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445,
9  448 (9th Cir. 2006).
10        Plaintiffs are not the first persons to claim an injury arising from the theft or loss
11 of their personal information while it was in the hands of a defendant with whom they
12 voluntarily shared it. Digital collections of thousands or even hundreds of thousands of
13 people's personal data are ubiquitous, and theft or loss of those collections is, if case law
14 is any indication, becoming increasingly common. In some cases, information is
15 compromised by hacking into computer networks that store personal information. *E.g.*,
16 *Bell v. Acxiom Corp.*, No. 4:06CV00485-WRW, 2006 U.S. Dist. LEXIS 72477, *2 (E.D.
17 Ark. Oct. 3, 2006); *Belle Chasse Automotive Care, Inc. v. Advanced Auto Parts, Inc.*,
18 Civ. No. 08-1568, 2009 U.S. Dist. LEXIS 25084, *2 (E.D. La. Mar. 24, 2009). Often, as
19 in this case, plaintiffs raise claims arising from the theft of computers that contain
20 collections of personal information. *E.g.*, *Randolph v. ING Life Ins. & Annuity Co.*, 486
21 F. Supp. 2d 1, 3 (D.D.C. 2007) (laptop computer stolen from corporate employee's
22 home); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 275
23 (S.D.N.Y. 2008) (laptop stolen from office of corporation's pension consultant); *Kahle v.
24 Litton Loan Servicing LP*, 486 F. Supp. 2d 705, 706 (S.D. Ohio 2007) (computers stolen
25 from mortgage servicer's office).
26        Accompanying the rise in the theft or loss of such data collections is a rise in civil
27 suits. The theft or loss of a data collection brings with it the possibility of what the court
28 ORDER – 4

1 will broadly refer to as "identity theft."  In the hands of an identity thief, a plaintiff's
2 personal information can be used to gain access to his financial accounts, open new
3 accounts in his name, and engage in other schemes limited only by the thief's ingenuity.
4       With one possible exception, however, none of the Plaintiffs before the court are
5 victims of identity theft.  Mr. Lalli and Ms. Krottner do not allege that anyone has
6 misused their financial information.  Mr. Shamasa alleges that someone used his personal
7 information to open a bank account in his name, but that he closed the account before he
8 suffered any loss.  ¶¶ 33-34.
9       Plaintiffs' good fortune in avoiding identity theft losses in the wake of the theft of
10 the Starbucks laptop raises questions about their fortunes in this court.  If they are not
11 victims, have they been harmed at all?  Plaintiffs insist that they have suffered harm.  At
12 the threshold, they claim an injury from the mere fact that they are at increased risk of
13 identity theft.  ¶¶ 6, 69-71.  Beyond that, they claim injuries arising from the need to
14 protect themselves from this increased risk, including the time they have spent and will
15 spend monitoring their accounts, and the money they have spent and will spend paying
16 for monitoring services.  ¶¶ 6-7, 69-71.  They also suggest that they are entitled to
17 compensation for "anxiety, emotional distress, [and] loss of privacy."  ¶ 106.  For
18 purposes of this order, the court will separate Plaintiffs' claimed injury into two parts:
19 the increased risk of identity theft, and "monitoring costs," a term that the court will use
20 to refer to all economic and non-economic harms Plaintiffs have already suffered as a
21 result of the theft of the laptop.  Starbucks contends that plaintiffs lack constitutional
22 standing to seek redress for these injuries in federal court, and that even if they had
23 standing, their injuries are insufficient under Washington law.

24 **A.     Plaintiffs Have Article III Standing.**

25       A federal court has no subject matter jurisdiction unless a plaintiff presents a
26 "Case[]" or "Controvers[y]."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992)
27 (quoting U.S. Const. art. III, § 2); *see also Ar v. Hawaii*, 314 F.3d 1091, 1097 (9th Cir.
28 ORDER – 5

2002). To meet the "irreducible constitutional minimum" of standing, a plaintiff must have suffered an "injury in fact," which is an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent" as opposed to "conjectural or hypothetical." *Defenders of Wildlife*, 504 U.S. at 560 (internal quotations omitted). A plaintiff's injury must be causally connected to the defendant's unlawful conduct. *Id.* Finally, it must be "likely, as opposed to merely speculative," that a favorable decision from the court will redress the injury. *Id.* at 561. The party invoking federal jurisdiction bears the burden of establishing the Article III "triad of injury in fact, causation, and redressability." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998). The plaintiff must meet that burden "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Defenders of Wildlife*, 504 U.S. at 561. On a motion to dismiss, standing can be established merely by pleading enough facts to give rise to a plausible inference of standing. *Id.*

It is the injury-in-fact requirement on which Starbucks focuses its attention. In its view, a bare increase in the risk of identity theft is not a constitutionally cognizable injury. Four district courts have adopted that view. *Key v. DSW Inc.*, 454 F. Supp. 2d 684, 688-89 (S.D. Ohio 2006); *Giordano v. Wachovia Secs., LLC*, Civ. No. 06-476 (JBS), 2006 U.S. Dist. LEXIS 52266, *15 (D.N.J. Jul. 31, 2006); *Randolph*, 486 F. Supp. 2d at 7-8; *Bell*, 2006 U.S. Dist. LEXIS 72477, at *11. The only federal appellate court to weigh in is the Seventh Circuit, which held in *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007), that an increased risk of identity theft is itself a sufficient injury to confer Article III standing. The sole district court within the Ninth Circuit to have confronted the issue followed *Pisciotta*. *Ruiz v. Gap, Inc.*, No. 07-5739 SC, 2009 U.S. Dist. LEXIS 28894, *11 (N.D. Cal. Apr. 6, 2009). The *Caudle* court also followed *Pisciotta*. 580 F. Supp. 2d at 280 (finding that increased risk of future identity theft is "an adequate injury-in-fact for standing purposes"). Finally, the *Randolph* plaintiffs

ORDER – 6

brought their claims to the District of Columbia's Article I courts after the District's Article III court found that they had no standing. *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 705 (D.C. 2009). Although the Article I trial court also found no standing, the District's Article I appellate court reversed, taking guidance from federal precedent and finding standing under its own law. *Id.* at 706-07.

None of these decisions binds the court, but the court concludes that *Pisciotta* and the cases following it correctly conclude that an increase in the risk of identity theft is a constitutionally sufficient injury. Starbucks contends that Plaintiffs have no present injury, and they can do no more than speculate that they might suffer an injury in the future.[1] The court disagrees. While Plaintiffs might suffer *additional* injuries in the future, they have already suffered (based on their allegations) an increase in their risk of identity theft. In response, Plaintiffs have taken various actions to monitor their accounts. Starbucks apparently concedes that some degree of monitoring is an appropriate response in the wake of the laptop theft, because it has offered a monitoring service to affected employees. If Plaintiffs have suffered no present injury, then why is Starbucks offering them a present remedy?

Outside the identity theft context, courts repeatedly find that conduct that creates a risk of future injury causes a present injury that satisfies Article III. In *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), the court found that "[a]n injury-in-fact may simply be the fear or anxiety of future harm." Where "emotional and psychological harms" are accompanied by "economic costs" that include "preventative

---

[1] Courts have questioned whether the Constitution permits federal courts to redress injuries that might occur in the future. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III."). Injuries that are *certain* to occur in the future suffice to confer standing, *id.*, but the Supreme Court has sometimes declined to find subject matter jurisdiction to consider more speculative future harms. *Id.* (reviewing cases where Court found no standing to redress "contingent" future injuries). In other cases, however, the Court has found standing to address speculative future injuries. For example, in *Massachusetts v. EPA*, the Court found standing to address Massachusetts' claim for future loss of coastal land as a result of a global-warming-induced rise in sea level, ruling that although the future "risk of catastrophic harm" was "remote," it was "nevertheless real." 549 U.S. 497, 526.

ORDER – 7

steps" associated with the future risk, the showing of injury is only strengthened. *Id.* at 265. In *Central Delta Water Agency v. United States*, the court noted the general rule that "the possibility of future injury may be sufficient to confer standing on plaintiffs; threatened injury constitutes injury in fact." 306 F.3d 938, 947 (9th Cir. 2002) (internal quotation omitted). The *Pisciotta* court cited *Central Delta* as support for its conclusion that "the injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm . . . ." 499 F.3d at 634 & n.3.

Starbucks distinguishes *Central Delta* on the ground that the question there was "'when' and not 'if' harm would occur." Def.'s Mot. at 12. The *Central Delta* court did not share Starbucks' point of view. The plaintiffs in that case argued that the failure of a government agency to hold enough water behind a dam to satisfy late-summer water needs was "highly likely" to cause the salinity of water downstream to exceed an acceptable level. 306 F.3d at 947. The court repeatedly referred to that threat as a "possibility," *id.*, or a "significant risk." *Id.* at 948 (noting that whether plaintiffs faced "a substantial risk of harm" was a "question of fact"). The court ultimately held that a "credible threat of harm is sufficient to constitute actual injury for standing purposes." *Id.* at 950. Applying the *Central Delta* holding here, the question is whether Plaintiffs' allegations, viewed in the light most favorable to them, show a credible threat of harm. Starbucks is poorly positioned to argue that there is no credible threat of harm, having already offered these Plaintiffs free credit monitoring. Why did they do so if Plaintiffs faced no credible threat of harm?

Plaintiffs facing an increased risk of identity theft are similar in some respects to plaintiffs seeking medical monitoring as a remedy for an increased risk of disease or injury, and no federal court has used Article III to close the courthouse doors to a medical monitoring claim. Medical monitoring "aids presently healthy plaintiffs who have been exposed to an increased risk of future harm to detect and treat any resultant harm at an

ORDER – 8

1  early stage." *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 571 (6th Cir. 2005).  In
2  *Sutton*, a Sixth Circuit panel explicitly held that the "increased risk of future harm" is the
3  injury that a medical monitoring plaintiff suffers, and that the injury suffices to confer
4  Article III standing.  *Id.* at 572.  In *Pritikin v. Dep't of Energy*, a Ninth Circuit panel
5  found no reason to question whether a plaintiff seeking to compel medical monitoring
6  had an injury in fact.  254 F.3d 791, 797 (9th Cir. 2001) ("[Plaintiff's] inability to receive
7  medical screening due to [the] failure to implement the Hanford medical monitoring
8  program establishes a cognizable injury.").  Like the Ninth Circuit in *Pritikin*, numerous
9  federal appeals courts have considered medical monitoring claims without questioning
10 whether the plaintiff had an injury in fact, even though courts have an obligation to
11 consider standing *sua sponte* if it is in question.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500,
12 514 (2006) (noting courts' "independent obligation to determine whether subject-matter
13 jurisdiction exists, even in the absence of a challenge from any party.").  In *Metro-North*
14 *Commuter R.R. Co. v. Buckley*, the Supreme Court held that the Federal Employers
15 Liability Act did not support a cause of action for medical monitoring, but never
16 suggested that the Constitution barred it from considering the claim.  521 U.S. 424, 444
17 (1997).  Lower courts have similarly analyzed medical monitoring claims without
18 expressing any concern about standing.  *E.g.*, *Syms v. Olin Corp.*, 408 F.3d 95, 105-06
19 (2d Cir. 2005); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 851-52 (3d Cir. 1990);
20 *Paz v. Brush Engineered Materials Inc.*, 555 F.3d 383, 397-99 (5th Cir. 2009); *Dodge v.*
21 *Cotter Corp.*, 328 F.3d 1212, 1213 (10th Cir. 2003).  The number of courts who have
22 assumed standing for medical monitoring plaintiffs suggests that the Constitution has no
23 quarrel with federal courts redressing injuries based on the threat of future harm.
24       Moreover, binding precedent dictates that Plaintiffs' claims of emotional distress
25 and anxiety arising from the laptop theft are enough to satisfy Article III.  In *Doe v.*
26 *Chao*, 540 U.S. 614, 617 (2004), the Court considered a claim that the Department of
27 Labor had disclosed plaintiff's social security number in violation of the federal Privacy
28 ORDER – 9

1   Act of 1974.  Plaintiff alleged no injury beyond being "'torn . . . all to pieces' and
2   'greatly concerned and worried' because of the . . . potentially 'devastating'
3   consequences" of the disclosure.  *Id.* at 617-18 (citation omitted).  Although the Court
4   found that the plaintiff had no Privacy Act claim, it noted when tying up "loose ends"
5   that he had Article III standing.  *Id.* at 624.
6        In ruling that Plaintiffs have alleged injuries in fact sufficient to survive a motion
7   to dismiss, the court does not suggest that the risk of future injury is always enough to
8   satisfy Article III.  The court acknowledges Starbucks' contention that the magnitude of
9   Plaintiffs' increased risk of identity theft depends on a host of contingencies.  No one
10  knows if the stolen laptop is in the hands of a person who intends to misuse the data
11  contained on it.  Even if it is, no one knows how likely it is that any one of the 97,000
12  Starbucks' employees with information stored on the laptop will be a victim of identity
13  theft.  At this stage in the litigation, however, the court relies solely on Plaintiffs'
14  allegations, which establish a presently compensable injury.  Were their allegations more
15  speculative, the result might well be different.  For example, if no laptop had been stolen,
16  and Plaintiffs had sued based on the risk that a laptop would be stolen at some point in
17  the future, the court might well deem that injury too speculative.  Here, the allegations
18  show that both Plaintiffs and Starbucks recognize that the threat of identity theft in the
19  wake of the loss of the laptop is not too speculative to constitute an injury in fact.
20  **B.  Plaintiffs Have No Injury Cognizable Under Washington Common Law.**
21       The court's conclusion that Plaintiffs have Article III standing does little to
22  determine whether they have an injury that Washington law recognizes.  An injury in fact
23  serves merely as a license to sue in federal court.  To recover for that injury, Plaintiffs
24  must identify a legal theory that permits compensation for their injury.  *See Doe v. Chao*,
25  540 U.S. at 641 (noting that a plaintiff with Article III standing has "[s]tanding to sue, but
26  not [necessarily] to succeed") (Ginsburg, J., dissenting).  Plaintiffs assert that Washington
27  negligence and contract law recognize their injury as a compensable harm.
28  ORDER – 10

1    No Washington court has considered whether a plaintiff has either a contract or negligence cause of action arising from an increased risk of identity theft unaccompanied by damages from identity theft. This court must therefore "try to predict how the highest state court would decide the issue." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1548 (9th Cir. 1989). In doing so, the court must glean what it can from Washington law, but can also look to other jurisdictions' decisions on similar issues. *Id.*

Lacking controlling precedent on which to rely, the court makes several observations based on Washington precedent that applies only obliquely to Plaintiffs' claims. First, Washington does not provide a contract or negligence remedy for every conceivable injury. For example, a plaintiff cannot recover emotional distress damages for breach of an employment contract. *Gagliardi v. Denny's Restaurants, Inc.*, 815 P.2d 1362, 1374 (Wash. 1991). Where a physician's negligent performance of a sterilization procedure leads to the birth of an unplanned but healthy child, the child's parents cannot recover the costs of raising him or her. *McKernan v. Aasheim*, 687 P.2d 850, 855 (Wash. 1984). Washington's courts can and do, however, fashion new common law causes of action causes of action or new remedies when appropriate.[2] *E.g.*, *Harbeson v. Parke-Davis, Inc.*, 656 P.2d 483, 486 (Wash. 1983) (recognizing "wrongful birth" and "wrongful life" as new causes of action); *Herskovits v. Group Health Cooperative of*

---

[2] Whether the Washington Supreme Court would recognize Plaintiffs' theory of relief or not, the cases cited above show that it would do so only after a careful analysis of state policy and precedent, rendering legal judgments for which it can ultimately be held accountable by the people of Washington. This court has neither nine Justices to independently consider Plaintiffs' claims nor direct accountability to the people of Washington. For similar reasons, many federal appellate courts demand restraint when considering novel state law claims that expand liability. Indeed, the *Pisciotta* court noted its reticence to expand Indiana law to recognize an enhanced risk of identity theft as a compensable injury. 499 F.3d at 635-36. The Ninth Circuit, however, has observed that federal courts cannot be reluctant to wade into novel state law issues, or else they may reward or punish litigants for their choice of a federal forum. *Paul v. Watchtower Bible & Tract Soc'y, Inc.*, 819 F.2d 875, 879 (9th Cir. 1987); *see also Torres v. Goodyear Tire & Rubber Co.*, 867 F.2d 1234, 1238 n.1 (9th Cir. 1989) ("For better or worse, this circuit has not seen fit to assume such a posture of restraint when it comes to deciding novel questions of state law."). The court notes that all or nearly all of the precedent bearing on Plaintiffs' novel claims comes from federal courts interpreting state law. This court assumes that this is so because claims like Plaintiffs' are typically brought on behalf of a putative class, and the Class Action Fairness Act diverts most such cases to federal courts.

ORDER – 11

*Puget Sound*, 664 P.2d 474, 478 (Wash. 1983) (recognizing remedy where negligent failure to diagnose terminal disease decreases patient's likelihood of survival).

Second, no Washington court has recognized a cause of action or remedy in which the sole injury is an increased risk of a future harm (whether or not accompanied by monitoring costs). In particular, Washington has never recognized a standalone claim for medical monitoring. *Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601, 606 (W.D. Wash. 2001) (reviewing Washington law). No Washington court has considered whether a plaintiff with no present injury can sue based on the increased risk of contracting a disease in the future. *Id.* (citing *Koker v. Armstrong Cork, Inc.*, 804 P.2d 659, 669 (Wash. Ct. App. 1991)). With a present injury, a plaintiff can recover damages merely for the fear of contracting a disease in the future. *Sorenson v. Raymark Indus., Inc.*, 756 P.2d 740, 742 (Wash. Ct. App. 1988) (permitting evidence of increased risk of cancer as a result of asbestos exposure to prove reasonableness of plaintiff's fear of cancer). Outside the medical monitoring context, the parties cite no Washington authority in which a plaintiff without a present injury sought recovery for an increased risk of future harm, and the court is aware of no such authority.[3]

Third, if the Washington Supreme Court were to recognize a common law cause of action to recover for an increased risk of identity theft, it would apparently be the only court to do so. So far as the court is aware, every court that has considered a similar claim has found that it is not cognizable under applicable state law. For example, although the *Pisciotta* plaintiffs were able to meet the standing requirements of Article III, their contract and negligence claims failed under Indiana law. 499 F.3d at 640. The

---

[3] Starbucks cites *Panag v. Omni Ins. Co.*, 204 P.3d 885 (Wash. 2009). That case considered the Washington Consumer Protection Act claims of plaintiffs who objected to insurance companies' debt collection practices. *Id.* at 888. Plaintiffs purchased credit monitoring services, *id.* at 903, but their concern was not the possibility of future identity theft, but rather whether defendants' unlawful practices had damaged their credit. The court distinguished *Forbes, Kahle*, and *Randolph* on that basis. *Id.* In so doing, it did not suggest that it would have agreed or disagreed with either of those cases had the plaintiffs before it brought claims similar to those of Mr. Lalli, Ms. Krottner, and Mr. Shamasa. The court finds *Panag* of no assistance in determining how the Washington Supreme Court would resolve Plaintiffs' negligence and contract claims.

ORDER – 12

court found that Indiana law required "[c]ompensable damages" for both a negligence and a breach of contract claim. *Id.* at 635. It concluded that the costs of credit monitoring were not compensable injuries. *Id.* at 639. Writing in 2007, the *Pisciotta* court noted that there was not "a single case or statute, from any jurisdiction, authorizing the kind of action [plaintiffs] now ask this federal court . . . to recognize . . . ." *Id.* at 639-40. Two years later, the legal landscape has not changed. Courts applying the law of at least nine states have rejected the claims of plaintiffs similarly situated to Mr. Lalli, Ms. Krottner, and Mr. Shamasa. Most courts, like the *Pisciotta* court, dispose of such claims as a matter of law, concluding that state law does not recognize either an increased risk of identity theft or monitoring costs as a compensable injury. *In re Hannaford Bros. Co. Customer Data Security Breach Litig.*, 613 F. Supp. 2d 108, 136 (D. Me. 2009); *Shafran v. Harley-Davidson, Inc.*, No. 07 Civ. 01365 (GBD), 2008 U.S. Dist. LEXIS 22494, at *8 (S.D.N.Y. Mar. 24, 2008); *Hendricks v. DSW Shoe Warehouse Inc.*, 444 F. Supp. 2d 775, 783 (W.D. Mich. 2006) ("There is no existing Michigan statutory or case law authority to support plaintiff's position that the purchase of credit monitoring constitutes either actual damages or a cognizable loss."); *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 714-23 (E.D. La. 2009) (rejecting, *inter alia*, Louisiana negligence and contract claims); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 608-09 (S.D.N.Y. 2009); *Randolph*, 973 A.2d at 708 (finding that monitoring costs were not compensable). Other courts have granted summary judgment for defendants after concluding that the plaintiffs could not prove that the theft or loss of their data meant that they were sufficiently likely to be victims of identity theft. *E.g.*, *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1020-21 (D. Minn. 2006) ("Plaintiffs have shown no present injury or reasonably certain future injury to support damages for any alleged increase risk of harm."); *Kahle*, 486 F. Supp. 2d at 712-13.

Finally, some courts have assumed without deciding that state law might recognize a claim for increased risk of identity theft analogous to a medical monitoring claim.

ORDER – 13

*Stollenwerk v. Tri-West Healthcare Alliance*, No. Civ. 03-0185-PHX-SRB, 2005 U.S. Dist. LEXIS 41054, at *13-14 (D. Ariz. Sept. 8, 2005), *rev'd in part*, 254 Fed. Appx. 664 (9th Cir. 2007); *Ruiz*, 2009 U.S. Dist. LEXIS 28894, at *15-16; *Caudle*, 580 F. Supp. 2d at 281-82. Those courts have granted summary judgment for defendants after finding plaintiffs' evidence insufficient as a matter of law to prove that identity theft was sufficiently likely. Those courts typically observe that the mere fact that a laptop, hard drive, or other collection of personal data was stolen is insufficient proof that the data will be misused. *E.g.*, *Caudle*, 580 F. Supp. 2d at 282 (noting "no evidence, direct or circumstantial, regarding the motive or capabilities of the [laptop] thief"). Absent other evidence tending to prove that the information has been or will be misused, these courts find that plaintiffs cannot prevail. *E.g.*, *Stollenwerk*, 2005 U.S. Dist. LEXIS 41054, at * 13 ("[T]here is no basis for a reasonable jury to determine that sensitive personal information was significantly exposed."); *Ruiz*, 2009 U.S. Dist. LEXIS 28894, at * 16-17 ("[T]his court is convinced that Ruiz cannot meet California's standard for recovery of monitoring costs because he has presented no evidence that there was a significant exposure of his personal information.").

With these observations of Washington's and other jurisdictions' law, the court predicts that the Washington Supreme Court would not recognize either a negligence or contract cause of action based solely on the increased risk of identity theft and associated monitoring costs. Washington has no legal tradition of recognizing remedies for harms not yet realized. In particular, it has never recognized a standalone medical monitoring claim. Even if Washington law were to recognize a negligence or contract claim in these circumstances, however, the court is convinced that it would require either proof of actual loss from identity theft or proof that a loss is highly likely to occur. Absent such proof, a plaintiff whose information has been stolen can simply wait until he or she experiences actual loss from an identity theft, and then sue. *See Koker*, 804 P.2d at 669 (noting that asbestos exposure plaintiff could "bring another action when actionable injury results").

ORDER – 14

The court does not suggest that this approach is optimal. Indeed, it may be that the relatively modest cost of credit monitoring is a much more cost-efficient remedy than a wait-and-see approach. Nonetheless, no Washington court has ever recognized a claim based solely on the need for prevention in advance of a cognizable injury. If prevention is the best policy in these circumstances, then the court predicts that the Washington Supreme Court would leave that judgment to the Washington legislature, which is better situated to assess the relevant policy considerations.[4]

Turning to the Plaintiffs before the court, Ms. Krottner and Mr. Lalli have no cognizable injury. They can claim only monitoring costs as an injury, and those costs are insufficient for the reasons discussed above. Mr. Shamasa is in a different position, because he alleges that someone opened an unauthorized bank account in his name shortly after the theft of the Starbucks laptop. Construing that allegation favorably to Mr. Shamasa, the timing of the event permits the inference that someone acquired his personal information from the laptop and misused it. For example, the Ninth Circuit reversed the *Stollenwerk* court's grant of summary judgment against a plaintiff who had experienced six incidents of identity theft shortly after the theft of defendant's computer hard drives. 254 Fed. Appx. at 665, 667-68. The district court found this evidence insufficient to raise an inference that the thieves used information acquired from the hard drives, but the Ninth Circuit held to the contrary. *Id.* at 667-68. The *Stollenwerk* reversal, however, does not mean that Mr. Shamasa has a claim. First, the court notes that the identity theft incidents in *Stollenwerk* resulted in $7,000 in unauthorized charges to the plaintiff. 2005 U.S. Dist. LEXIS 41054, at *3. Mr. Shamasa never experienced an unauthorized charge, and thus cannot make a similar claim of a present injury. *See Hannaford Bros.*, 613 F. Supp. 2d at 133-35 (holding that plaintiffs whose unauthorized

---

[4] Although some state legislatures have enacted laws requiring notification of persons whose personal information has been compromised, the court is not aware of any such law that creates a private right of action, much less a private right to damages. *E.g.*, Ariz. Rev. Stat. Ann. § 44-7501(H) (giving state attorney general sole enforcement power).

ORDER – 15

charges were reversed by defendant had no cognizable injury). Second, the reversal in *Stollenwerk* merely required the district court to consider whether the plaintiff had a claim under the assumption that Arizona courts would apply an evidentiary standard similar to the one applicable to medical monitoring claims. This court cannot make a similar assumption, because Washington has not recognized a standalone medical monitoring claim. As noted, the court predicts that Washington would require an actual loss from identity theft before permitting a claim like Mr. Shamasa's to proceed.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Starbucks' motion to dismiss (Dkt. # 21) and DENIES Plaintiffs' motion to consolidate this action with the *Lalli* action (Dkt. # 13) as moot. The court directs the clerk to enter judgment for Starbucks. The court will enter a separate order in the *Lalli* action directing the clerk to enter judgment for Starbucks.

IT IS SO ORDERED.

DATED this 14th day of August, 2009.

The Honorable Richard A. Jones
United States District Judge

ORDER – 16